SISTERS OF CHARITY OF PROVIDENCE OF MONTANA, A CORPORATION, PLAINTIFF AND RESPONDENT, v. MARGARET NICHOLS AND JAMES W. SCOTT, DEFENDANTS AND APPELLANTS, JOHN C. HOYT AND R. V. BOTTOMLY, PLAINTIFFS IN INTERVENTION AND APPELLANTS, v. SISTERS OF CHARITY OF PROVIDENCE OF MONTANA, ET AL., PLAINTIFFS AND CROSS-DEFENDANTS AND RESPONDENTS AND MARGARET NICHOLS AND JAMES W. SCOTT, DEFENDANTS.

No. 11964.
Submitted March 9, 1971.
Decided March 24, 1971.
483 P.2d 279.

Hoyt & Bottomly, Great Falls, Richard V. Bottomly argued, Great Falls, for appellants.

Cure & Borer, Great Falls, Edward W. Borer, argued, Great Falls, Jardine, Stephenson, Blewett & Weaver, Great Falls, for respondents.

Chadwick W. Smith, argued, Helena, amicus curiae.

MR. JUSTICE HASWELL delivered the Opinion of the Court.

This is essentially an action by plaintiff hospital against defendant automobile accident victim seeking (1) judgment of $2,038.30 for hospital services furnished her for her accidental injuries, and (2) application to such judgment of that part of the accident settlement proceeds deposited with the court. The victim's attorneys intervened in this action seeking judgment against the hospital (1) foreclosing their attorney's lien of $679.43 covering their services in part in effecting the accident settlement, attorneys' fees on foreclosure, and costs; (2) application to such judgment of enough of the deposited settlement proceeds in full satisfaction of the hospital bill. The district court of Cascade County, the Hon. Truman G. Bradford, district judge sitting without a jury, awarded judgment to the hospital in the full amount of the hospital bill, accrued interest, and costs and directed application of the entire deposited settlement proceeds to that judgment. From this judgment, the accident victim and her attorneys appeal.

The ultimate facts, with one exception, are undisputed. On August 8, 1966 defendant Margaret Nichols was injured when struck by an automobile driven by James W. Scott. She was hospitalized immediately in the Columbus Hospital in Great Falls, operated by plaintiff Sisters of Charity of Providence of Montana, where she remained through September 23. During her hospitalization she received hospital services of the reasonable value of $2,038.30. Two days prior to her discharge, she employed the law firm of Hoyt and Bottomly to handle her per-

sonal injury claim against Scott under a written contingent fee agreement whereby her attorneys were to receive one-third of any settlement proceeds for their services.

On November 17 her attorneys filed her personal injury action against Scott in the district court of Cascade County. On December 2 the hospital served upon Scott a notice of its lien for hospital services furnished the accident victim, and on December 6 the hospital filed notice of such lien and the amount thereof with the clerk of court in the personal injury action, all pursuant to Montana's hospital lien law contained in section 45-1201 et seq., R.C.M.1947.

The accident victim's attorneys negotiated a settlement of her personal injury action for the sum of $5,000. Between December 16, 1966 and January 5, 1967, her attorneys received this settlement amount from Scott's liability insurer in three separate drafts which we will identify as follows: Draft #1 in the sum of $2,065.20 payable to the accident victim, her husband, and her attorneys. Draft #2 in the sum of $2,038.30 (the amount of the hospital bill) payable to the same three and the hospital. Draft #3 in the sum of $896.50 (the amount of the doctor bill) payable to the same three and Dr. Howard I. Popnoe.

The attorneys deducted one-third of Draft #1 as that part of their contingent fee covering the amount of the settlement proceeds included in that draft, and remitted the balance, less costs advanced, to the accident victim and her husband. They attempted to deduct for their services one-third of Draft #2 and one-third of Draft #3, remitting the balances to the hospital and doctor respectively, but both the hospital and doctor refused. The attorneys, after consultation with their client, waived their claimed attorney's lien on the proceeds of Draft #3 and remitted the entire $896.50 to Dr. Popnoe. Ultimately the amount of Draft #2 covering the hospital bill was deposited by Scott's insurer with the clerk of the district court to await the outcome of the present litigation.

The accident victim's attorneys had no oral or written agree-

ment with the hospital to perform any legal services for it. The only express agreement for their services was with the accident victim under the written contingent fee contract.

The sole disputed fact concerns the actual knowledge of the accident victim's attorneys of the existence of the hospital lien at the time they disbursed the remaining settlement funds in Draft #1 to their client and her husband. The attorneys claim no actual knowledge of the existence of the hospital lien until after such disbursement, claiming to have first received such knowledge through a telephone call to Scott's insurer after January 5 and thereafter being informed by letter from the hospital's attorneys on January 10. The hospital claims the accident victim's attorneys had actual knowledge from a variety of circumstances of the existence of the hospital lien prior to disbursement of the settlement proceeds, and that, in any event, the attorneys had prior constructive notice of the hospital lien from the filing of notice thereof under the hospital lien law.

Stripped to its essentials, the present litigation is between the hospital, on the one hand, and the accident victim and her attorneys, on the other. The hospital seeks judgment against the accident victim for the hospital bill, accrued interest, and costs together with application to this judgment of the entire amount of the funds deposited with the court by Scott's insurer representing Draft #2. The accident victim and her attorneys seek judgment of foreclosure of the attorney's lien to the extent of one-third of the deposited funds, attorneys' fees on foreclosure of the lien, and costs; application of the deposited funds to full satisfaction of this judgment; and payment of the balance of the deposited funds to the hospital in full satisfaction and discharge of the hospital bill.

The underlying issue upon appeal is whether, under the foregoing circumstances, the attorney's lien is enforceable against that part of the accident settlement proceeds otherwise payable to the hospital under its hospital lien. Or, stated alternatively, is the hospital liable for its pro rata share of the attorneys'

fees incurred in procuring an accident settlement from a third party from which payment of its hospital bill can be made?

The attorney's lien law is contained in section 93-2120, R.C.M. 1947, which provides:

"The compensation of an attorney and counselor for his services is governed by agreement, express or implied, which is not restrained by law. From the commencement of an action or the service of an answer containing a counterclaim, the attorney who appears for a party has a lien upon his client's cause of action or counterclaim, which attaches to a verdict, report, decision or judgment in his client's favor, and the proceeds thereof in whomsoever hands they may come; and cannot be affected by any settlement between the parties before or after judgment."

The language of this statute clearly indicates that the foundation of an attorney's lien is an express or implied contract for his services. It is the fact of his employment that gives rise to his right to compensation. In re Baxter's Estate, 94 Mont. 257, 22 P.2d 182. The lien simply provides security for the payment to the attorney of his client's contractural obligation to pay him for services. Galbreath v. Armstrong, 121 Mont. 387, 193 P.2d 630. Such lien does not change the nature of the underlying contractual obligation upon a stranger to the attorney's employment contract to pay the attorney for his services.

The heart of the issue here is whether an implied contract exists between the hospital and the attorneys for their services and compensation therefor, it being admitted that no express contract exists.

Under the facts here, we hold there is no implied contract. The attorneys here simply performed the services they were obligated to perform under their employment contract with their client, the accident victim. The client received the benefit of her attorneys' services in the form of accident settlement proceeds from which she could pay the hospital bill she owed to the hospital and discharge its lien. The fact that an incidental benefit was also received by the hospital from her at-

torneys' services in the form of settlement proceeds from which its bill could be paid does not, in itself, create an implied contract by the hospital to pay her attorneys for their services.

Examples of this principle abound in a variety of common business transactions. For example, a retail business employs an attorney to collect its accounts receivable and from the proceeds pays off a mortgage on its property; it is axiomatic that no implied contract arises obligating the mortgage holder to pay the attorney for his services, even though the mortgage holder receives an incidental benefit for the attorney's services. Or, take the case of a subrogated insurer hiring an attorney to prosecute its subrogation claim and using the proceeds to pay its utility bill; clearly no implied contract arises obligating the utility to pay the attorney for his services, despite the resulting benefit received by payment of its utility bill. In such cases, as here, incidental benefits conferred on strangers to the attorney's employment contract, standing alone, create no implied contract by such stranger to pay the attorney for his services. Felton v. Finley, 69 Idaho 381, 209 P.2d 899; In re Faling's Est., 113 Or. 6, 228 P. 821, 231 P. 148.

The attorneys and their client additionally contend, however, that the hospital here is obligated to share in the attorneys' fees and costs of collection on the same basis that a subrogated insurer is obligated to share attorney's fees and costs with its insured in recovery against a third party. This analogy is inapt and the principle inapplicable here. The obligation of the subrogated insurer to share in the costs of recovery from a third party wrongdoer arises because the insurer occupies the position of the insured with coextensive rights and liabilities and no creditor-debtor relationship between them. But here, unlike that situation, the hospital's claim and lien is based upon a debt owed the hospital by its patient in whose shoes it does not stand for any purpose, the debt being owed to it by its patient irrespective of the patient's rights against a third party wrongdoer. Because the substitution principle does not apply here, no obliga-

tion arises on the part of the hospital to share in the costs of recovery against a third party, and the attempted analogy fails.

■ Proceeding to discussion of the priority and extent of the attorney's lien in the instant case, it is clear that the attorney's lien attaches to the entire settlement proceeds regardless of the number of settlement drafts issued. Section 93-2120, R.C. M.1947, provides in pertinent part:

"* * * the attorney * * * has a lien upon his client's cause of action * * * which attaches to * * * the proceeds thereof in whomsoever hands they may come; and cannot be affected by any settlement between the parties before or after judgment."

Thus here the attorney's lien attached to all three settlement drafts comprising the total settlement proceeds.

It is equally clear that the attorney's lien is senior and superior to the hospital lien. The hospital lien law expressly so provides in section 45-1201, R.C.M.1947:

"* * * Such lien, however, shall be subject to any attorney's lien provided for in section 93-2120. * * *."

Accordingly, the attorney's lien claimant is entitled to be paid in full before the hospital lien claimant is entitled to receive anything, all of which the hospital acknowledges.

■■ Nonetheless, the extent of the attorney's lien is limited to the amount owed the attorneys under the terms of their employment contract. United States v. Hudson, D.C.Mont., 39 F.Supp. 797. Where, as here, the attorney and his client receive a sufficient amount of the settlement proceeds to satisfy the attorneys' fee in full, the attorneys' contractual rights are discharged by payment and no further attorney's lien rights remain. At this point the previously subordinate hospital lien becomes the senior outstanding lien against the balance of the settlement proceeds.

Prior to this time, neither the client nor her attorneys possessed the option of requiring payment of a pro rata share of

the attorneys' fee from that portion of the settlement proceeds otherwise payable to the hospital under its hospital lien rights. Such option, at best, would empower the attorneys and their client to collect a part of the attorneys' fee from a stranger to the attorneys' employment contract, and at the same time partially destroy the hospital's lien rights. And although the attorneys in this case clearly did not so conduct themselves, such option, at worst, would permit an attorney to collect a double fee for the same services, one from his client, and a second time from the hospital. In either event, any such option would be most unjust and inequitable, and we cannot attribute such legislative intent to the attorney's lien law.

We note that the hospital contends that because the settlement proceeds were divided into three drafts, three funds exist and under the marshaling principle embodied in section 45-203, R.C.M.1947, the attorneys' fee must be paid from the fund exclusively subject to the attorney's lien (Draft #1) leaving the hospital lien payable from the only remaining fund to which the hospital can lay claim (Draft #2). We hold this marshaling principle inapplicable where, as here, there is but one settlement and but one fund consisting of the entire settlement proceeds to which both liens attach in their statutory priority, and where, as here, this one fund is sufficient to pay both debts in full and completely discharge both liens.

We further hold that the one disputed fact in this case is immaterial to the decision herein. Whether or not the attorneys had actual knowledge of the existence of the hospital lien prior to disbursing the settlement proceeds, they are chargeable with constructive notice of such lien. The hospital filed its notice of lien and the amount thereof with the clerk of court in the personal injury action pursuant to the hospital lien law. Section 45-1203, R.C.M.1947, expressly provides that "such filing shall be notice to all parties to said action of such lien." The attorneys of record in the personal injury action, as agents of their client therein, are chargeable with the notice and knowl-

edge imparted to their client by the filing of the notice of hospital lien in said action. As such notice was prior to any disbursement of the settlement proceeds, the lien attached to such proceeds in its statutory priority. The client was simply not entitled to payment of any of the settlement proceeds until the hospital lien was discharged.

The judgment of the district court is affirmed, and a typographical error in the figure $2,028.30 therein is ordered changed to the figure $2,038.30.

MR. CHIEF JUSTICE JAMES T. HARRISON, and MR. JUSTICES JOHN C. HARRISON, DALY, and CASTLES, concur.