In re Guardianship and Conservatorship of Johnathan Harley Bloomquist, a protected person.
Catherine M. Yaeger, conservator, appellant, v. City of Lincoln, doing business as Lincoln General Hospital, creditor, appellee.
Michael Centamore, appellant, v. Robert Cocanougher, appellee, and AMISUB (Saint Joseph Hospital), Inc., intervenor-appellee.

514 N.W.2d 656

Filed March 29, 1994. Nos. A-92-752, A-92-825.

Allan J. Eurek, of Pierson, Fitchett, Hunzeker, Blake & Loftis, for appellant Yaeger.

James W. Knowles, Jr., of Knowles Law Office, for appellant Centamore.

Linda W. Rohman and Douglas L. Curry, of Erickson & Sederstrom, P.C., for appellee City of Lincoln.

Neil B. Danberg, Jr., and Conal L. Hession, of Kennedy, Holland, DeLacy & Svoboda, for intervenor-appellee.

Roger S. Keetle for amicus curiae Nebraska Hospital Association.

SIEVERS, Chief Judge, and IRWIN and MILLER-LERMAN, Judges.

SIEVERS, Chief Judge.

In these cases, which the court has consolidated upon appeal, we are asked by appellants to hold that a physician, nurse, or hospital that performs medical services for an injured party is obligated to pay attorney fees to the injured party's attorney if the physician, nurse, or hospital relies upon the hospital lien statute, Neb. Rev. Stat. § 52-401 (Reissue 1988), to collect its bill for services. In both of these cases, the district courts found that the medical provider was not obligated to pay attorney fees and costs to the injured party's attorney. We hold that a medical provider who relies upon the hospital lien statute is not obligated to pay attorney fees and costs to the injured party's attorney, even though a successful prosecution by the attorney of the injured party's tort case results in payment of the medical provider's lien. Accordingly, we affirm the district courts' judgments.

## PROCEDURAL AND FACTUAL BACKGROUND

In case No. A-92-752, Catherine M. Yaeger, the conservator of Johnathan Harley Bloomquist, a minor, applied to the county court for Lancaster County for permission to settle a tort claim. Using § 52-401, the City of Lincoln, doing business as Lincoln General Hospital, claimed a lien upon the settlement proceeds in the amount of $16,456.15. The conservator acknowledged Lincoln General's lien, but sought the approval of the court to pay Lincoln General the value of its services less a reasonable portion of the cost of recovery, including attorney fees.

Johnathan had been struck by a car driven by Kim Folsom and sustained a closed head injury. His head injury necessitated hospital services on two different occasions at Lincoln General, and the bill for these services totaled $16,456.15. Johnathan's conservator brought suit against Folsom and achieved a settlement in the amount of $100,000. It was agreed that Lincoln General had perfected its lien under § 52-401 and had provided notice to Folsom's liability carrier as well as her underinsured motorist carrier, which would provide coverage

for Johnathan. The evidence was that counsel for the conservator was entitled to a one-third contingent fee, together with costs of recovery, for a total expense of $34,148.78. It was agreed that if the hospital were required to share in those attorney fees and expenses; "its fair, reasonable and proportionate share of such attorneys' fees and expenses" would be $5,619.57.

The county court directed that the conservator make full payment to Lincoln General without deduction for attorney fees or expenses. The district court for Lancaster County, sitting as an appellate court, affirmed the decision of the county court. The conservator has perfected her appeal to this court.

In case No. A-92-825, Michael Centamore sustained a partial amputation of his right heel in a lawnmower accident. As a result, he was hospitalized at Saint Joseph Hospital in Omaha and incurred a substantial bill. Centamore retained counsel to pursue his claim for damages against Robert Cocanougher, who owned the premises where the accident occurred. Centamore's fee agreement with his attorney was for a contingent fee of one-third, together with out-of-pocket expenses incurred in the prosecution of the action.

The underlying case against the alleged tort-feasor, Cocanougher, was tried to a jury, which returned a verdict in Centamore's favor in the amount of $75,000. The record establishes that under the fee agreement, Centamore's counsel was entitled to a fee of $25,000 plus reimbursement of expenses in the amount of $1,386.13. The Nebraska Department of Social Services (DSS) had made payments to Saint Joseph on Centamore's behalf in the amount of $8,700.73, and DSS agreed to share in the cost of recovery and accept $5,642.09 in full payment of its subrogation interest. (Neb. Rev. Stat. § 68-716 (Reissue 1990) expressly provides that DSS shall have the right of subrogation whenever there is an application for medical assistance benefits, thereby placing DSS in the position of a subrogor.) Saint Joseph declined counsel's request to reduce its lien for attorney fees and costs. Saint Joseph mailed its notice of lien to State Farm Insurance Company, the insurer of Cocanougher, and filed a petition in intervention in this action, claiming $39,683.89 of the $75,000 judgment in

satisfaction of its lien. The $75,000 judgment was paid into court and the money distributed, except for the sum of $13,914.36, which the hospital and Centamore agree is the disputed amount.

The district court found that Saint Joseph's lien was not subject to reduction in favor of Centamore for a share of the expenses and attorney fees incurred in prosecution of Centamore's tort claim. Centamore properly perfected an appeal to this court.

## ASSIGNMENT OF ERROR

Although Bloomquist's conservator and Centamore state it differently, both parties in summary assert that the district court erred in holding that a § 52-401 hospital lien is not subject to a reduction for a proportional share of attorney fees and expenses necessarily incurred in recovering a tort settlement or judgment from which the hospital lien is satisfied.

## STANDARD OF REVIEW

The facts are stipulated or otherwise undisputed in both of these cases, and we are presented with questions of law. Regarding questions of law, an appellate court has an obligation to reach a conclusion independent of that of the trial court. *Nebraska Builders Prod. Co. v. Industrial Erectors*, 239 Neb. 744, 478 N.W.2d 257 (1992).

## HOSPITAL LIEN STATUTE

Whenever any person shall employ a physician, nurse, or hospital to perform professional service or services of any nature, in the treatment of or in connection with an injury, and such injured person shall claim damages from the party causing the injury, such physician, nurse, or hospital, as the case may be, shall have a lien upon any sum awarded the injured person in judgment or obtained by settlement or compromise on the amount due for the reasonable value of services necessarily performed, except that no such lien shall be valid against anyone coming under the Nebraska Workers' Compensation Act. In order to prosecute such lien, it shall be necessary for such physician, nurse, or hospital to serve a written notice upon

the person or corporation from whom damages are claimed that such physician, nurse, or hospital claims a lien for such services and stating therein the amount due and the nature of such services, except that whenever an action is pending in court for the recovery of such damages, it shall be sufficient to file the notice of such lien in the pending action.

§ 52-401.

There is no claim that the liens in either case were not properly perfected and asserted.

## ANALYSIS

Bloomquist's conservator and Centamore claim that the hospitals should be obligated to share in the cost of the tort recoveries which resulted in the payment of the hospitals' liens. They principally rely upon three Nebraska cases: *West Neb. Gen. Hosp. v. Farmers Ins. Exch.*, 239 Neb. 281, 475 N.W.2d 901 (1991); *United Services Automobile Assn. v. Hills*, 172 Neb. 128, 109 N.W.2d 174 (1961); and *Kaiman v. Mercy Midlands Medical & Dental Plan*, 1 Neb. App. 148, 491 N.W.2d 356 (1992).

The first argument advanced is that *West Neb. Gen. Hosp., supra*, is dispositive of the issue before this court and requires reversal of the district courts' decisions. That case involved an action against a liability insurer (Farmers) to enforce a hospital lien after Farmers had already paid the full liability coverage to the injured party. The factual background involved an automobile accident in which Kenneth Schneider was injured as a result of the alleged negligence of Janae Kehm, who was insured by Farmers. Schneider's hospital bills at West Nebraska General Hospital totaled $31,361.07. On June 22, approximately 6 weeks after the accident, Schneider and his attorney settled with Farmers for the policy limit of $50,000, and the attorney secured a settlement draft in that amount from Farmers on June 22. Coincidentally, on that same day, West Nebraska General Hospital's attorney mailed a letter claiming a hospital lien for $4,412.05 to one of Farmers' agents. Whether this lien was perfected was not discussed or resolved. However, a supplemental hospital lien was sent to Farmers on July 16

claiming a balance of $26,959.02. Enforcement of this supplemental lien was the basis of the Supreme Court's decision.

The Supreme Court reversed the district court's summary judgment in favor of the hospital, finding that although the lien, as regards Schneider, attached immediately upon his receipt of hospital services, the lien was not perfected with respect to Farmers prior to the time the settlement was accomplished. Thus, although Farmers had knowledge of the hospital bill, the Supreme Court said that Farmers did not have actual or constructive knowledge of the hospital's intent to claim a lien and that Farmers was not liable to the hospital under the lien statute. The court held that without notice that the hospital was claiming a lien on the settlement proceeds to satisfy the injured party's debts, Farmers' knowledge that such debts existed was not sufficient to satisfy the notice provisions of § 52-401. Although the case was resolved on the issue of whether West Nebraska General Hospital had perfected its lien, the court nonetheless wrote as follows under the subheading "Enforcing the Lien:"

> Under the statute, when the injured party "claim[s] damages from the party causing the injury," the statute gives the hospital "a lien upon any sum awarded the injured person in judgment or obtained by settlement or compromise on the amount due . . . ." § 52-401. Analyzing a similar hospital lien statute, the bankruptcy court for the district of Maryland described such a lien as transferring the interest of the injured party in the proceeds of a judgment or settlement to the hospital. *In re Howard*, 43 Bankr. 135 (D. Md. 1983). See, also, *In re Nelson*, 92 Bankr. 837 (D. Minn. 1988) (lien attaches to the patient's preexisting cause of action upon rendition of services by the hospital). When this interpretation is applied to the case at bar, the lien transferred to West Nebraska Schneider's interest in sums obtained in judgment or settlement of his claims, up to the value of the services provided by West Nebraska *less a reasonable portion of the costs of recovery, including attorney fees.* See *United Services Automobile Assn. v. Hills*, 172 Neb. 128, 109

N.W.2d 174 (1961) (subrogor who accepts proceeds of litigation in which he did not participate must contribute proportional share of expenses, including attorney fees). (Emphasis supplied.) *West Neb. Gen. Hosp.*, 239 Neb. at 285-86, 475 N.W.2d at 905-06.

Both Bloomquist's conservator and Centamore use the emphasized portion of the above quote as a springboard to the conclusion that the Nebraska Supreme Court has already spoken to this issue with the result that Lincoln General Hospital and Saint Joseph Hospital must pay attorney fees and costs in these cases. The issue in *West Neb. Gen. Hosp.* was whether the hospital had complied with the notice requirements of § 52-401 so as to be able to impose its lien against Farmers, which had already paid the full extent of its coverage prior to the time the hospital gave notice of its lien to Farmers. However, the court in *West Neb. Gen. Hosp.* stated that since § 52-401 had never been interpreted, it was "necessary to fully discuss the statute's general scheme in order to resolve the issues involved in [that] case." 239 Neb. at 283, 475 N.W.2d at 904. Nonetheless, we do not read the Supreme Court's opinion in *West Neb. Gen. Hosp.* to say that the amount of a hospital's lien is reduced by a pro rata share of attorney fees and expenses when there is a recovery in the injured patient's tort action. Rather, it is our view that the emphasized portion in *West Neb. Gen. Hosp.* deals with the amount of money which is *available* for the satisfaction of a hospital's lien. Under our reading of *West Neb. Gen. Hosp.*, the hospital can impose its lien only on that amount of settlement or verdict money which remains after deduction for "a reasonable portion of the costs of recovery, including attorney fees." Perhaps an example will illustrate.

If an injured party's hospital bill were $60,000, and if a lien to that extent were perfected, followed by a tort recovery of $75,000 with a one-third contingent attorney fee contract, there would be only $50,000 available for the satisfaction of the hospital's $60,000 lien out of the $75,000 recovery. The net result would be that $10,000 of the hospital lien would not be satisfied from the tort recovery. *West Neb. Gen. Hosp.* does not impose a burden upon the hospital to actually pay fees and expenses for the cost of making the recovery, but, rather, simply

limits the amount available for payment of the lien to what remains after reasonable attorney fees and costs are deducted. Applying that principle to the facts in Centamore's case, we find that the $75,000 jury verdict is first reduced by the attorney fee of $25,000 and expenses of $1,386.13, which leaves $48,613.87 available for the satisfaction of Saint Joseph Hospital's lien of $39,683.89. In the Bloomquist case, the recovery was $100,000 reduced by a one-third contingent fee and costs which totaled $34,148.78, leaving $65,851.22 available for the hospital lien of $16,456.15.

We next turn to *United Services Automobile Assn. v. Hills*, 172 Neb. 128, 109 N.W.2d 174 (1961), cited by the Supreme Court in *West Neb. Gen. Hosp.* and by both Bloomquist's conservator and Centamore. Bloomquist's conservator and Centamore argue that the common fund doctrine from *Hills* applies, meaning that the hospitals must contribute to the cost of recovery. Hills was an attorney representing Albert Dawson, who had collision coverage through United on his automobile. United paid $454.93 for collision damage to Dawson's automobile. When Hills and Dawson settled Dawson's tort case, the tort-feasor's insurer issued a draft for $454.93 to reimburse United for its payment of the collision damage. The case brought by United against Hills was to resolve Hills' claim that he was entitled to an attorney fee out of the $454.93 reimbursed to United.

The *Hills* case represents an early common fund doctrine case, expressed in the following language:

> Ordinarily the right of a lawyer to compensation for his services depends upon a contract of employment, express or implied. But there are exceptions to this general rule. One exception is stated in a well-known text as follows: "An attorney who renders services in recovering or preserving a fund, in which a number of persons are interested, may in equity be allowed his compensation out of the whole fund, only where his services are rendered on behalf of, and are a benefit to, the common fund." 7 C. J. S., Attorney and Client, § 193 b (2), p. 1098.

172 Neb. at 132, 109 N.W.2d at 177.

However, the applicable rule from the case states that "where

the holder of the subrogation right does not come into the action, whether he refuses to do so or acquiesces in the plaintiff's action, but accepts the avails of the litigation, he should be subjected to his proportionate share of the expenses thereof, including attorney's fees." *Id.* at 133, 109 N.W.2d at 177. In our view, the important feature of *Hills* is that United, the collision carrier, was a subrogee and was found to have accepted the proceeds of its insured's litigation to recover its subrogation interest from the wrongdoer. In the instant cases, Lincoln General Hospital and Saint Joseph Hospital do not hold subrogation interests—they are creditors of the injured parties, thus, *Hills* is distinguishable.

It is fundamental that subrogation is the right of one, who has paid an obligation which another should have paid, to be indemnified by the other. See *Chadron Energy Corp. v. First Nat. Bank*, 236 Neb. 173, 459 N.W.2d 718 (1990). The Supreme Court has said that "[t]o be entitled to subrogation, one must pay a debt for which another is liable." *Ehlers v. Perry*, 242 Neb. 208, 222, 494 N.W.2d 325, 335 (1993). The hospitals have provided services to injured parties for which they have charged them. The hospitals have not paid a debt for Centamore or Bloomquist and thus cannot be said to be subrogors. A lien is " 'a right afforded by law to have an obligation satisfied out of particular property.' " *Id.* at 217, 494 N.W.2d at 332.

Last, Bloomquist's conservator and Centamore both argue that this court's decision in *Kaiman v. Mercy Midlands Medical & Dental Plan*, 1 Neb. App. 148, 491 N.W.2d 356 (1992), is the controlling authority for their position. We cannot agree. *Kaiman* is also a case involving the collection of a subrogation interest by a litigant through the efforts of her attorney in bringing a workers' compensation action. The health insurer which was reimbursed by the efforts of the injured worker and her attorney would not have received the return of the money it had *paid on behalf of the worker* for the worker's medical expenses but for the workers' compensation action. In the cases before us, the hospitals have a right to be paid by Centamore and Bloomquist's conservator irrespective of whether there is recovery in the negligence actions. *Kaiman* is distinguishable from the instant cases.

Our examination of common fund doctrine cases decided by the Nebraska Supreme Court fails to reveal any authority where the common fund doctrine has been applied to force a creditor, albeit one with a statutory lien, to share in the cost of litigation which incidentally satisfies the creditor's bill. The hospital lien is created by a specific Nebraska statute. There is no express provision of § 52-401 which requires a hospital, physician, or nurse to pay a portion of the injured patient's tort litigation expenses when that litigation results in the satisfaction of the medical provider's lien. When statutory language is plain and unambiguous, no judicial interpretation is needed to ascertain the statute's meaning. *State Bd. of Ag. v. State Racing Comm.*, 239 Neb. 762, 478 N.W.2d 270 (1992).

In our view, the statute is plain and unambiguous in that it does not provide for the position advanced by Bloomquist's conservator and Centamore. The fact of the matter is that the Legislature has provided for liens against tort recoveries for the benefit of physicians, nurses, and hospitals which perform professional services for negligently injured persons. However, the statute does not provide that physicians, nurses, or hospitals must pay a proportional share of the cost of the injured party's tort recovery which results in satisfaction of the lien. In that regard, we observe that an attempt to amend the lien statute to provide for such a pro rata payment by health care providers of the costs of the claim or action which satisfies the lien was introduced in the 93d Legislature through L.B. 761, which was killed in committee.

We hold that under the hospital lien statute, § 52-401, a physician, nurse, or hospital is not liable for a pro rata portion of the costs of a claim or action brought by an injured patient to collect damages which results in the satisfaction of a properly perfected lien. Accordingly, the decision of the district court in each case is affirmed.

AFFIRMED.