IN RE GUARDIANSHIP AND CONSERVATORSHIP OF JOHNATHAN HARLEY BLOOMQUIST, A PROTECTED PERSON.
CATHERINE M. YAEGER, CONSERVATOR, APPELLANT, V. CITY OF LINCOLN, DOING BUSINESS AS LINCOLN GENERAL HOSPITAL, CREDITOR, APPELLEE.
MICHAEL CENTAMORE, APPELLANT, V. ROBERT COCANOUGHER, APPELLEE, AND AMISUB (SAINT JOSEPH HOSPITAL), INC., INTERVENOR-APPELLEE.
523 N.W.2d 352

Filed October 28, 1994.    Nos. S-92-752, S-92-825.

Allan J. Eurek, of Pierson, Fitchett, Hunzeker, Blake & Loftis, for appellant Yaeger.

James W. Knowles, Jr., of Knowles Law Office, for appellant Centamore.

Linda W. Rohman and Douglas L. Curry, of Erickson & Sederstrom, P.C., for appellee City of Lincoln.

Neil B. Danberg, Jr., Conal L. Hession, and Matthew G. Dunning, of Kennedy, Holland, DeLacy & Svoboda, for intervenor-appellee.

Roger S. Keetle for amici curiae Nebraska Hospital Association and Nebraska Association of Hospitals and Health Systems.

HASTINGS, C.J., WHITE, CAPORALE, FAHRNBRUCH, LANPHIER, and WRIGHT, JJ., and BOSLAUGH, J., Retired.

LANPHIER, J.

Nebraska's hospital lien statute, Neb. Rev. Stat. § 52-401 (Reissue 1993), grants medical providers a statutory lien. The lien attaches to any financial recovery that a patient may receive

from a third party in the amount of the reasonable value of medical services necessarily performed. The two cases before us have been consolidated upon appeal. The issue presented in these cases is whether or not a hospital with a perfected lien is obligated to share pro rata in the patient's reasonable costs of recovery from the third party.

Appellants urge that the common fund doctrine applies. The common fund doctrine provides that a plaintiff's attorney, whose efforts create a fund to which others also have a claim, is entitled to recover his fees and costs from the entirety of that fund. Black's Law Dictionary 276 (6th ed. 1990). Appellees argue that the common fund doctrine does not apply because they are creditors, rather than subrogees. As creditors, they are entitled to be paid in any event. Appellees also argue that because there is no contractual relationship between the hospital and the attorney, the hospitals are not obligated to the attorney. Section 52-401 is silent regarding medical providers' liability for attorney expenses. Appellants assert that *West Neb. Gen. Hosp. v. Farmers Ins. Exch.*, 239 Neb. 281, 475 N.W.2d 901 (1991), is dispositive of the issues before this court and requires reversal of the lower courts' decisions. In both of these cases before us, the lower courts held that the medical provider was not obligated to pay a pro rata portion of the patient's attorney fees and costs. The injured parties appealed to the Nebraska Court of Appeals, and that court affirmed the lower courts' judgments in *In re Guardianship & Conservatorship of Bloomquist*, 2 Neb. App. 756, 514 N.W.2d 656 (1994). We granted appellants' petitions for further review.

## PROCEDURAL AND FACTUAL BACKGROUND

The facts are stipulated or otherwise undisputed in both cases, and we are presented with a question of law.

The matter of case No. S-92-752 arose from a traffic accident involving Johnathan Harley Bloomquist, a minor child. Bloomquist was struck by a car on September 27, 1989, and sustained a closed head injury. He was taken by ambulance to Lincoln General Hospital (LGH) for emergency medical care.

LGH provided medical services valued at $16,456.15 to Bloomquist as a result of his injuries from the car accident.

Catherine M. Yaeger, Bloomquist's aunt, petitioned for and was appointed his guardian and conservator. The verified petition for appointment of conservator filed with the Lancaster County Court discloses that Bloomquist was indigent and unable to pay any medical bills.

LGH perfected a hospital lien pursuant to § 52-401. The hospital lien, in the amount of $16,456.15, attached to any sum awarded Bloomquist in judgment or obtained by settlement or compromise of any personal injury claim arising out of his accident.

Bloomquist's conservator retained an attorney, Allan Eurek, to prosecute a tort action against the car's driver, Kim Folsom. The conservator consented to a contingent fee agreement pursuant to which Eurek would receive one-third of any amounts recovered on Bloomquist's behalf.

After filing suit and conducting discovery, the conservator was able to achieve a settlement of $100,000. The conservator then applied to have the settlement approved by the county court, as well as her plan to pay medical providers the amounts due them, less their proportionate share of the costs of recovering the settlement.

The parties agree that LGH has a perfected lien, as required by § 52-401, on the settlement proceeds. The parties further agree that the efforts of the conservator's attorney, Eurek, resulted in the settlement of $100,000 and that his requested fee of $33,333, representing 33⅓ percent of the recovery, plus costs of $815.78, is reasonable. Finally, the parties agreed that if LGH is required to share in attorney fees and expenses, its fair share is $5,619.57.

LGH was given notice of the proceedings in the county court and appeared as an interested party, claiming the full value of the services rendered without any reduction for the costs of litigation. Eurek contended that his services, expended for the benefit of Bloomquist, also benefited LGH and that, therefore, LGH was liable to him for an attorney fee in the amount of one-third of the sum recovered for the benefit of the hospital. The disputed amount, $5,619.57, was paid into court to be distributed upon resolution of the issue of LGH's liability to Eurek, if any.

Following a hearing in the county court for Lancaster County, the parties were permitted to submit briefs regarding the attorney fees issue. By order dated March 3, 1992, the county court ruled that LGH would receive the full amount of its lien without deduction for attorney fees and the other expenses of prosecuting Bloomquist's personal injury claim.

Eurek appealed the county court's ruling to the district court for Lancaster County. The district court affirmed the decision of the county court, and again, Eurek perfected an appeal. In appealing to the Court of Appeals, Eurek took no action to stay the district court's judgment. Consequently, the funds originally paid into court were disbursed to LGH.

The matter of case No. S-92-825 arose when the plaintiff-appellant, Michael Centamore, suffered a partial amputation of his right heel when a power lawnmower ran over his heel. The accident occurred on premises owned by Robert Cocanougher. As a result of his injuries, Centamore was hospitalized at Saint Joseph Hospital, the intervenor herein, from June 2 to 29, 1990, at a cost of $44,016.40.

Centamore retained James W. Knowles, Jr., as counsel to pursue his claim for damages against Cocanougher. Centamore's fee agreement with his attorney was for a contingent fee of one-third, together with out-of-pocket expenses incurred in the prosecution of the action. Centamore filed a negligence action in the Douglas County District Court against Cocanougher.

On September 12, 1990, the Nebraska Department of Social Services (DSS) filed a lien with Knowles for amounts paid by DSS to Saint Joseph Hospital and to various physicians who examined and/or treated Centamore. By the time this matter was tried to a jury, DSS' lien was $8,700.73.

On October 29, 1990, Saint Joseph filed a lien with Cocanougher's insurance carrier, State Farm Insurance Company, for $44,015.40. Subsequent to the filing of the lien, DSS paid $4,332.51 on Saint Joseph's bill, and Saint Joseph amended its lien to $39,683.89.

Centamore's case was tried to a jury, and a $75,000 verdict was returned in Centamore's favor. Pursuant to the fee agreement, Knowles was entitled to an attorney fee of $25,000

and reimbursement of $1,386.13 which represented costs incurred in the handling of the claim. Centamore's counsel asked DSS and Saint Joseph if they would voluntarily reduce their liens by their share of the expenses of recovery.

According to Neb. Rev. Stat. § 68-716 (Reissue 1990), DSS was given the right of subrogation automatically upon Centamore's application for medical assistance benefits. DSS, in the position of a subrogor, accepted counsel's request to reduce its lien. Saint Joseph declined counsel's request to reduce its lien and filed a petition to intervene in this action.

The district court for Douglas County found that Saint Joseph's lien was not subject to reduction in favor of Centamore for a share of the expenses and attorney fees incurred in prosecution of Centamore's tort claim. Centamore properly perfected an appeal to the Nebraska Court of Appeals.

## ASSIGNMENT OF ERROR

Appellants assert that the Court of Appeals erred in determining that the hospital lien statute, § 52-401, does not impose liability upon medical providers for a pro rata portion of the costs of a claim or action brought by an injured person to collect damages which results in the satisfaction of a properly perfected lien. Appellants urge that the decision of the Court of Appeals in this matter is contrary to the holding of this court in *West Neb. Gen. Hosp. v. Farmers Ins. Exch.*, 239 Neb. 281, 475 N.W.2d 901 (1991).

## STANDARD OF REVIEW

We are presented with questions of law. Regarding questions of law, an appellate court has an obligation to reach a conclusion independent of that of the trial court. *Kopecky v. National Farms, Inc.*, 244 Neb. 846, 510 N.W.2d 41 (1994); *Ehlers v. Perry*, 242 Neb. 208, 494 N.W.2d 325 (1993).

## HOSPITAL LIEN STATUTE

The underlying goal of a hospital lien statute is to lessen the burden on hospitals and other medical providers imposed by nonpaying accident cases. Annot., 16 A.L.R. 5th 262 § 2[a] (1993). In Nebraska, as in many other states, medical providers

are granted a lien upon any recovery that the patient might receive from the tort-feasor who caused the patient's injuries. Nebraska's hospital lien statute provides:

> Whenever any person shall employ a physician, nurse, or hospital to perform professional service or services of any nature, in the treatment of or in connection with an injury, and such injured person shall claim damages from the party causing the injury, such physician, nurse, or hospital, as the case may be, shall have a lien upon any sum awarded the injured person in judgment or obtained by settlement or compromise on the amount due for the reasonable value of services necessarily performed, except that no such lien shall be valid against anyone coming under the Nebraska Workers' Compensation Act. In order to prosecute such lien, it shall be necessary for such physician, nurse, or hospital to serve a written notice upon the person or corporation from whom damages are claimed that such physician, nurse, or hospital claims a lien for such services and stating therein the amount due and the nature of such services, except that whenever an action is pending in court for the recovery of such damages, it shall be sufficient to file the notice of such lien in the pending action.

§ 52-401.

We must address whether or not § 52-401 requires medical providers to pay attorney fees to effect recovery from a third party in satisfaction of their lien.

> When asked to interpret a statute, a court must determine and give effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense. In construing a statute, a court must look at the statutory objective to be accomplished, the problem to be remedied, or the purpose to be served, and then place on the statute a reasonable construction which best achieves the purpose of the statute, rather than a construction defeating the statutory purpose.

*Durand v. Western Surety Co.*, 245 Neb. 649, 651, 514 N.W.2d 840, 842 (1994). See, also, *Sarpy County v. City of Springfield*,

241 Neb. 978, 492 N.W.2d 566 (1992).

Liens are supplemental and additional remedies for collection, and therefore, statutes granting liens should be regarded as remedial in nature. *Landis Machine Co. v. Omaha Merchants Transfer Co.*, 142 Neb. 397, 9 N.W.2d 198 (1943). Lien statutes should be construed so as to give full effect to the remedy contemplated by the Legislature. *Id.* See *Senften v. Church of the Nazarene*, 214 Neb. 708, 335 N.W.2d 753 (1983) (stating that mechanic's lien statutes are remedial in nature and require a liberal construction in order to protect all claimants within their scope and to promote substantial justice).

Section 52-401 states that medical providers shall have a lien upon any sum awarded the injured person in judgment or obtained by settlement or compromise on the amount due for the reasonable value of services necessarily performed.

Appellants principally rely upon *West Neb. Gen. Hosp. v. Farmers Ins. Exch.*, 239 Neb. 281, 475 N.W.2d 901 (1991), to support their assertion that § 52-401 allows for the pro rata reduction of a hospital lien for any fees due patient's counsel. In *West Neb. Gen. Hosp.*, we addressed the effect of less than complete compliance with § 52-401's filing and notice requirements on a hospital's ability to enforce its lien. The hospital had failed to perfect its lien with timely, written notice to the tort-feasor or his insurer. We held that an insurer's actual knowledge that the patient had been treated by the hospital was not sufficient to render it liable for settling with the patient without satisfying the lien.

Interpretation of the hospital lien statute was a matter of first impression in *West Neb. Gen. Hosp.* Therefore, we declared that it was "necessary to fully discuss the statute's general scheme in order to resolve the issues involved." 239 Neb. at 283, 475 N.W.2d at 904. In so doing, we stated:

> Under the statute, when the injured party "claim[s] damages from the party causing the injury," the statute gives the hospital "a lien upon any sum awarded the injured person in judgment or obtained by settlement or compromise on the amount due . . . ." § 52-401. Analyzing a similar hospital lien statute, the bankruptcy court for the district of Maryland described such a lien as transferring

the interest of the injured party in the proceeds of a judgment or settlement to the hospital. *In re Howard*, 43 Bankr. 135 (D. Md. 1983). See, also, *In re Nelson*, 92 Bankr. 837 (D. Minn. 1988) (lien attaches to the patient's preexisting cause of action upon rendition of services by the hospital). When this interpretation is applied to the case at bar, *the lien transferred to West Nebraska [the patient's] interest in sums obtained in judgment or settlement of his claims, up to the value of the services provided by West Nebraska less a reasonable portion of the costs of recovery, including attorney fees. See United Services Automobile Assn. v. Hills, 172 Neb. 128, 109 N.W.2d 174 (1961) (subrogor who accepts proceeds of litigation in which he did not participate must contribute proportional share of expenses, including attorney fees).* (Emphasis supplied.) 239 Neb. at 285-86, 475 N.W.2d at 905-06.

Appellants argue that the above-emphasized portion of our opinion requires hospital lienholders to share pro rata in the expenses of litigating or settling a personal injury claim. However, the passage, although it recites the longstanding Nebraska common-law rule of the common fund, is dicta and is not controlling regarding the issue before us. "A case is not authority for any point not necessary to be passed on to decide the case or not specifically raised as an issue addressed by the court." *Commerce Sav. Scottsbluff v. F.H. Schafer Elev.*, 231 Neb. 288, 300, 436 N.W.2d 151, 160 (1989). Although we declared that it was "necessary to fully discuss the statute's general scheme in order to resolve the issues involved" in *West Neb. Gen. Hosp.*, we did not specifically address the issue before us in the present cases. No other Nebraska case is controlling on this issue. Legislative history for this statute, enacted in 1927, is lacking. *West Neb. Gen. Hosp., supra.*

Therefore, we address appellants' argument that § 52-401 requires a hospital lienholder to share pro rata in the expenses of litigating or settling a personal injury claim without reference to clearly binding precedent or any legislative intent.

Our starting point of necessity is the plain language of § 52-401. It states that a "physician, nurse, or hospital, as the case may be, shall have a lien upon any sum awarded the injured

person in judgment or obtained by settlement or compromise on the amount due for the reasonable value of services necessarily performed." Generally, cases from other states that examine similar statutes hold that the applicable hospital lien was intended to be effective for its full amount without reduction for any fees due the patient's counsel. *National Ins. v. Parkview Memorial Hosp.*, 590 N.E.2d 1141 (Ind. App. 1992); *Harlow v. Lloyd*, 15 Kan. App. 2d 497, 809 P.2d 1228 (1991); *Bashara v. Baptist Memorial Hosp. System*, 685 S.W.2d 307 (Tex. 1985); *Hillcrest Medical Ctr. v. Fleming*, 643 P.2d 868 (Okla. App. 1982); *Wheaton v. Dept. of Public Aid*, 92 Ill. App. 3d 1084, 416 N.E.2d 780 (1981); *Maynard v. Parker*, 75 Ill. 2d 73, 387 N.E.2d 298 (1979); *Broadlawns, etc., v. Estate of Major*, 271 N.W.2d 714 (Iowa 1978); *Sisters of Charity v. Nichols*, 157 Mont. 106, 483 P.2d 279 (1971).

Despite the apparent consensus, it is difficult to generalize from the above cases due to disparate statutory schemes. For example, in Illinois, the Hospital Lien Act, Ill. Ann. Stat. ch. 770, para. 35 § 0.01 et seq. (Smith-Hurd 1993), grants nonprofit hospitals liens for the amount of their reasonable charges against all claims and causes of actions of the injured person. Ch. 770, para. 35 § 1. However, the amount of the lien cannot exceed one-third of the sum paid or due to the injured person, and any such lien is subordinated to any attorney's lien attached to the same funds. Ch. 770, para. 35 §§ 1 and 5. Alternatively, in Kansas, the hospital lien statute limits the lien to $5,000 and subordinates the hospital lien to any attorney lien. *Harlow, supra*.

Therefore, these cases from other jurisdictions must be referenced with caution. However, as similar arguments were addressed and resolved by those courts, they deserve some consideration.

Appellants argue that the common fund doctrine is applicable in this matter. The common fund doctrine is founded on the "equitable concept that an attorney who performs services in creating a fund should in equity and good conscience be allowed compensation out of the whole fund from all those who seek to benefit from it." *Harlow*, 15 Kan. App. 2d at 500, 809 P.2d at 1231. The application of the common fund doctrine

to the facts before us would not increase the total amount of attorney fees, but would apportion those fees among the patients and the holders of perfected hospital liens.

We first addressed the common fund doctrine in *United Services Automobile Assn. v. Hills*, 172 Neb. 128, 109 N.W.2d 174 (1961). In *Hills*, a car accident victim had retained Hills, an attorney, to represent him in an action against the driver of the other car. The client's own insurer, United, had paid him $454.93 for the property damage to his automobile. Attorney Hills informed United of his intent to sue and offered to handle the insurer's subrogation claim. Hills received no response. Hills negotiated a settlement with the tort-feasor's insurer, Allstate, in the amount of $3,500. When the $3,500 was ready for payment, Hills requested Allstate to issue two drafts: one in the amount of $454.93 payable to United and Hills, and one for $3,045.07 payable to the client and Hills. United commenced a declaratory judgment proceeding against Hills and Allstate and presented this court with an issue regarding the interest of Hills, if any, in the draft for $454.93. Allstate alleged it had no interest in the litigation, asserted that it was a stakeholder, paid the disputed amount into court, and was dismissed from the case.

In *Hills*, we stated,

> The applicable rule is that where the holder of the subrogation right [United] does not come into the action, whether he refuses to do so or acquiesces in the plaintiff's action, but accepts the avails of the litigation, he should be subjected to his proportionate share of the expenses thereof, including attorney's fees.

172 Neb. at 133, 109 N.W.2d at 177. The rationale for this rule was stated as follows:

> Ordinarily the right of a lawyer to compensation for his services depends upon a contract of employment, express or implied. But there are exceptions to this general rule. One exception is stated in a well-known text as follows: "An attorney who renders services in recovering or preserving a fund, in which a number of persons are interested, may in equity be allowed his compensation out of the whole fund, only where his services are rendered on behalf of, and are a benefit to, the common fund."

7 C. J. S., Attorney and Client, § 193 b (2), p. 1098. 172 Neb. at 132, 109 N.W.2d at 177.

As appellees argue, most courts which have considered the issue have concluded that the common fund doctrine does not apply in hospital lien cases. See, *Harlow v. Lloyd*, 15 Kan. App. 2d 497, 809 P.2d 1228 (1991); *Bashara v. Baptist Memorial Hosp. System*, 685 S.W.2d 307 (Tex. 1985); *Hillcrest Medical Ctr. v. Fleming*, 643 P.2d 868 (Okla. App. 1982); *Maynard v. Parker*, 75 Ill. 2d 73, 387 N.E.2d 298 (1979); *Broadlawns, etc., v. Estate of Major*, 271 N.W.2d 714 (Iowa 1978). These courts, as did the Nebraska Court of Appeals, generally come to that conclusion by determining that medical providers do not hold subrogation interests; rather, they are the creditors of the injured parties.

Subrogation involves

> [t]he substitution of one person in the place of another with reference to a lawful claim, demand or right, so that he who is substituted succeeds to the rights of the other in relation to the debt or claim, and its rights, remedies, or securities. . . . Insurance companies, guarantors and bonding companies generally have the right to step into the shoes of the party whom they compensate . . . .

Black's Law Dictionary 1427 (6th ed. 1990).

"A lien is 'a right afforded by law to have an obligation satisfied out of particular property.' " *Ehlers v. Perry*, 242 Neb. 208, 217, 494 N.W.2d 325, 332 (1993) (quoting *Dupuy v. Western State Bank*, 221 Neb. 230, 375 N.W.2d 909 (1985)). A lien is a "[q]ualified right of property which a creditor has in or over specific property of his debtor, as security for the debt or charge or for performance of some act." Black's Law Dictionary, *supra* at 922.

In *Maynard, supra*, the Illinois court declared that the relationship between the patient and the hospital was a debtor-creditor relationship. The patient's liability to the hospital was not dependent upon the creation of a fund; rather, the patient was obligated to pay for medical services rendered out of any resources that might become available.

The Iowa court in *Broadlawns, etc., supra*, rejected the applicability of the common fund doctrine in hospital lien cases

for the reason that hospitals and patients do not stand on equal bases as claimants against the fund. The hospital was merely a creditor.

The Kansas court distinguished cases involving subrogation interests from hospital lien cases in order to reach a similar conclusion. *Harlow, supra.* A subrogated insurer has coextensive rights and liabilities with its insured in comparison to the debtor-creditor relationship between a patient and a hospital. The court concluded that "when there are sufficient funds to satisfy attorney fees and a hospital lien . . . attorney fees cannot be deducted from the hospital lien." 15 Kan. App. 2d at 501, 809 P.2d at 1232.

In *Sisters of Charity v. Nichols,* 157 Mont. 106, 483 P.2d 279 (1971), the Montana court found the analogy between subrogated insurers and hospital lien cases inapt.

> [T]he hospital's claim and lien is based upon a debt owed the hospital by its patient in whose shoes it does not stand for any purpose, the debt being owed to it by its patient irrespective of the patient's rights against a third party wrongdoer. Because the substitution principle does not apply here, no obligation arises on the part of the hospital to share in the costs of recovery against a third party, and the attempted analogy fails.

*Id.* at 112-13, 483 P.2d at 283.

The Nebraska Court of Appeals agreed with the foregoing authorities. In *In re Guardianship & Conservatorship of Bloomquist,* 2 Neb. App. 756, 764, 514 N.W.2d 656, 660-61 (1994), the court stated that "[t]he hospitals have provided services to injured parties for which they have charged them. The hospitals have not paid a debt for Centamore or Bloomquist and thus cannot be said to be subrogors." Given that the hospitals were not subrogors, the Court of Appeals concluded that the common fund doctrine could not apply.

It is true that the common fund doctrine generally applies in situations presenting a subrogation interest and that under Nebraska law, the hospital's interest in the patient's recovery fund is clearly that of a lienholder. See, *Ehlers, supra*; *West Neb. Gen. Hosp. v. Farmers Exch. Ins.,* 239 Neb. 281, 475 N.W.2d 901 (1991). However, the ultimate question is not

whether the hospitals are lienholders or subrogors, but whether the hospitals have been so benefited by the patients' attorneys who rendered services in obtaining settlements that the attorneys should in equity be allowed their compensation out of the whole fund. By examining this ultimate issue, one court has recently concluded that the common fund doctrine does apply in hospital lien cases. *Martinez v. St. Joseph Healthcare System*, 117 N.M. 357, 871 P.2d 1363 (1994).

In *Martinez*, the New Mexico Supreme Court stated:

> We believe that in hospital lien cases the "common-fund" doctrine most appropriately defines the duties and liabilities of the parties and provides the most fundamental fairness. Under this doctrine, an attorney who creates a pool of funds for a group has the right to seek payment from the pool or seek proportional contribution from those who accept the benefits of the attorney's efforts. . . . In hospital lien cases, the hospital's right to assert a lien, and its right to recovery based on that lien, depend *by statute* on the obtaining of a judgment or settlement. . . . The proceeds of that judgment or settlement operate as a fund, and, without the fund, the hospital has nothing upon which to assert a lien under the Act. By seeking payment from the fund in reliance on the lien, the hospital directly receives the benefits of the work done by the patient's attorney. . . . Because of this, it would be fundamentally unfair to allow the Hospital to collect on its lien without paying its prorated share of the legal expenses.

871 P.2d at 1366-67.

Appellees attempt to limit the application of the common fund doctrine as stated in *United Services Automobile Assn. v. Hills*, 172 Neb. 128, 109 N.W.2d 174 (1961), by distinguishing between a statutory lien interest and a subrogation interest. Appellees argue that, unlike subrogated insurers, hospital lienholders have no interest in the injured patient's cause of action against the third party tort-feasor. Hospital lienholders have no standing to participate in the injured patient's personal injury action, and they have no separate cause of action against the tort-feasor or the tort-feasor's insurer.

Appellees argue that the hospitals have a lien for the full amount of their bill and are only "incidentally" benefited by the expenditure of costs by the patients and the effort of the patients' attorneys. This argument overlooks the fact that the claim against a penniless person is not in reality or accounting practice worth its full value. A lien on such a personal injury claim is worthless unless and until through the expenditure of funds and effort by the attorney the claim is successfully asserted to completion. The policy underlying the common fund doctrine (to avoid unfairness) exists in both a subrogation situation and in a hospital lien situation where the hospital is a creditor with a lien and the patient has no funds to pay. In both situations, the claim or lien will only be paid if the injured party incurs the cost to effectuate a settlement or judgment.

A subrogation right is essentially an equitable right to recover and account for a trust fund. *Krause v. State Farm Mut. Auto. Ins. Co.*, 184 Neb. 588, 169 N.W.2d 601 (1969), *modified* 184 Neb. 638, 170 N.W.2d 882. Where the insured, having sustained a loss in excess of the amount he received from his insurance company, obtains compensation from the wrongdoer, the insured then holds the funds in trust for the insurance company. *Id.* The underlying rationale is unjust enrichment.

In the cases before us, indigent patients received medical services which they were unable to pay for. But for the efforts of the patients' attorneys and the incurring of costs by the patients, it is unlikely that the hospitals would receive any payment. The lien statute grants hospitals a method of obtaining a full or partial recovery for the value of services that the hospitals would probably have "written off" as uncollectible; and while not a windfall to the hospitals, the recovery should not come without costs. In some circumstances, an injured party may lack any incentive to pursue litigation because his medical expenses equal or exceed the limits of insurance or other assets available to satisfy a judgment from a third party. Any recovery such a party would receive would be exhausted by attorney fees and medical expenses.

Medical providers who rely on the hospital lien statute to

recover their costs only receive payment if the injured person incurs the cost of hiring an attorney to effectuate a recovery. If the injured person elects not to prosecute a claim, then the lien itself is worthless. The hospital may not stand in the patient's shoes, but the hospital is entirely dependent upon the patient's attorney.

## CONCLUSION

As was recently decided by the New Mexico Supreme Court, we hold that hospitals are liable for their pro rata portion of the legal expenses and costs where they seek payment out of a judgment or settlement for the amount of a lien filed pursuant to § 52-401.

REVERSED AND REMANDED.