NATIONAL ACCOUNT SYSTEMS OF LINCOLN, INC., A NEBRASKA
CORPORATION, APPELLEE, V. PAMELA J. GLASSCOCK, APPELLANT.

529 N.W.2d 529

Filed March 24, 1995.   No. S-93-806.

T.J. Hallinan and Kenneth Cobb, of Cobb, Hallinan &
Ehrlich, P.C., for appellant.

James A. Cada for appellee.

WHITE, C.J., CAPORALE, FAHRNBRUCH, LANPHIER, WRIGHT,
and CONNOLLY, JJ.

WHITE, C.J.

On July 29, 1988, Pamela J. Glasscock was injured in a
two-automobile accident. As a result, Glasscock incurred
$20,253.65 in medical services rendered by several health care
providers. Glasscock eventually filed suit against the driver of
the other vehicle and negotiated a settlement of $150,000. In the
process, Glasscock incurred $5,611.60 in litigation expenses and
$42,816.29 in attorney fees. To ensure payment of their debts,
the health care providers asserted hospital or physician's liens
pursuant to Neb. Rev. Stat. § 52-401 (Reissue 1993).

The health care providers subsequently assigned their
interests of $709.48 to National Account Systems of Lincoln,
Inc. From the settlement award, Glasscock's attorney, Kenneth
Cobb, sent National Account Systems a check for $290.81, the

amount it was due less one-third for attorney fees and for its pro rata share of the litigation expenses. National Account Systems returned the check, demanding payment in full and contending that it was not required to pay proportionate shares of either Cobb's fees or the litigation expenses.

When Cobb and Glasscock refused, National Account Systems sued Glasscock, contending that it was entitled to recover the full amount of $709.48 plus attorney fees and costs. The county court for Lancaster County entered judgment for National Account Systems, requiring Glasscock to pay National Account Systems $709.48 plus $75 in attorney fees. The Lancaster County District Court affirmed. Glasscock appealed to the Nebraska Court of Appeals, and we removed this case pursuant to our authority to regulate the caseloads of the appellate courts.

On appeal, Glasscock argues that both the county court and the district court erred in holding that the holders of hospital liens are not subject to pro rata reduction for reasonable attorney fees and litigation expenses. After the parties filed their briefs in this case, we decided *In re Guardianship & Conservatorship of Bloomquist*, 246 Neb. 711, 523 N.W.2d 352 (1994), which is controlling. In *Bloomquist*, we addressed for the first time the issue of whether § 52–401 requires a hospital lienholder to pay proportionate shares of attorney fees and litigation expenses incurred in litigating or settling a personal injury claim.

Section 52–401 provides:

> Whenever any person shall employ a physician, nurse, or hospital to perform professional service or services of any nature, in the treatment of or in connection with an injury, and such injured person shall claim damages from the party causing the injury, such physician, nurse, or hospital, as the case may be, shall have a lien upon any sum awarded the injured person in judgment or obtained by settlement or compromise on the amount due for the reasonable value of services necessarily performed, except that no such lien shall be valid against anyone coming under the Nebraska Workers' Compensation Act. In order to prosecute such lien, it shall be necessary for such

physician, nurse, or hospital to serve a written notice upon the person or corporation from whom damages are claimed that such physician, nurse, or hospital claims a lien for such services and stating therein the amount due and the nature of such services, except that whenever an action is pending in court for the recovery of such damages, it shall be sufficient to file the notice of such lien in the pending action.

In *Bloomquist*, we held that "hospitals are liable for their pro rata portion of the legal expenses and costs where they seek payment out of a judgment or settlement for the amount of a lien filed pursuant to § 52-401." 246 Neb. at 726, 523 N.W.2d at 361. In so doing, we reasoned:

But for the efforts of the patients' attorneys and the incurring of costs by the patients, it is unlikely that the hospitals would receive any payment. The lien statute grants hospitals a method of obtaining a full or partial recovery for the value of services that the hospitals would probably have "written off" as uncollectible; and while not a windfall to the hospitals, the recovery should not come without costs. In some circumstances, an injured party may lack any incentive to pursue litigation because his medical expenses equal or exceed the limits of insurance or other assets available to satisfy a judgment from a third party. Any recovery such a party would receive would be exhausted by attorney fees and medical expenses.

Medical providers who rely on the hospital lien statute to recover their costs only receive payment if the injured person incurs the cost of hiring an attorney to effectuate a recovery. If the injured person elects not to prosecute a claim, then the lien itself is worthless. The hospital may not stand in the patient's shoes, but the hospital is entirely dependent upon the patient's attorney.

246 Neb. at 725-26, 523 N.W.2d at 360.

Glasscock also argues that, because National Account Systems, as the health care providers' assignee, elected to pursue its remedy as a lienholder under § 52-401, it is precluded from pursuing other remedies. We agree. By recovering the full amount National Account Systems was due

under the lien, less its proportionate share for attorney fees and litigation expenses, National Account Systems' debt has been fully satisfied, and it may not pursue other remedies against Glasscock merely because it did not receive 100 cents on the dollar for the lien. To hold otherwise would vitiate the core holding in *Bloomquist* and would encourage § 52–401 lienholders to refrain from action until the patient has recovered a judgment and then pursue the patient for any proportionate reduction in the lienholders' foreclosure action.

Because our decision in *Bloomquist* is dispositive and because we see no reason to depart from that decision, we reverse and remand the decision of the district court.

REVERSED AND REMANDED.