31 P.3d 926

**KENNETH F. WHITE, CHTD., a professional corporation, Plaintiff–Respondent,**

v.

**ST. ALPHONSUS REGIONAL MEDICAL CENTER, an Idaho Corporation, Defendant–Appellant.**

No. 26000.

Court of Appeals of Idaho.

July 23, 2001.

Review Denied Sept. 24, 2001.

Skinner, Fawcett & Mauk, Boise, for appellant. Charles W. Fawcett argued.

Kenneth F. White, Chtd., Nampa, for respondent.

LANSING, Judge.

This appeal presents a question as to which party holds the superior claim to payment from the proceeds of a personal injury

settlement. One claimant is the hospital that provided medical services to the injured person and asserts a statutory hospital lien. The competing claimant is the attorney who represented the injured person to obtain the settlement. He claims a statutory or common law attorney's charging lien and, alternatively, requests application of the "common fund" doctrine. The district court imposed the common fund doctrine in favor of the attorney and on that basis held that the settlement proceeds should be applied first to pay the attorney fees, with the balance going to the hospital. The hospital appeals, and we reverse.

## FACTS AND PROCEDURAL HISTORY

The parties submitted a stipulation of facts, which the district court accurately summarized as follows:

On December 10, 1997, an accident occurred between a vehicle operated by Earl S. Kent (Kent) and a vehicle operated by Lorretta Krivanec (Krivanec). As a result of the accident Krivanec sustained serious injuries which required her hospitalization at [St. Alphonsus Regional Medical Center]. Krivanec was hospitalized from December 10, 1997, to January 13, 1998, during which time she incurred charges for services rendered by [St. Alphonsus] in the amount of $131,677.23. There is no dispute that the hospital charges by [St. Alphonsus] were reasonably incurred. Within 24 hours of the accident Kenneth White (White) was contacted by Krivanec's husband. On March 11, 1998, Krivanec signed a contingency fee agreement with White, which provided that White would be entitled to receive 25% of any settlement recovered on behalf of Krivanec. White expended time, effort and labor, as well as advanced costs, in settlement negotiations of Krivanec's claim against Kent. . . .

Kent had liability insurance coverage at the time of the accident through Colonial Insurance Co. The policy limit of the insurance is $25,000.00 per person. On October 30, 1998, approximately ten months after the accident, Colonial tendered a check to White for $25,000.00 payable to White, [St. Alphonsus] and Krivanec.

[St. Alphonsus] recorded a Hospital Lien with the Ada County Recorder on March 27, 1998, within the ninety (90) day time period proscribed by the Hospital Lien Statute.

Recovery of the $25,000.00 policy limit was made without the necessity of an action being filed. Pursuant to the retainer agreement, White claims he is entitled to attorney fees in the amount of $6250.00 and costs advanced in the amount of $518.16. The contingency amount claimed by White in this matter is both reasonable and appropriate.

White and St. Alphonsus were unable to agree upon a disposition of the settlement proceeds. Consequently, White filed a petition seeking a declaratory judgment that he had a lien or other equitable claim against the settlement proceeds for the amount of his attorney fees and costs advanced that was superior to the St. Alphonsus hospital lien. St. Alphonsus filed a motion for summary judgment, which was submitted on stipulated facts. The district court held that the hospital lien took priority over any valid lien that White might possess. However, based upon application of the common fund doctrine, the district court went on to hold that White was entitled to receive payment out of the settlement proceeds for his fees and costs incurred in obtaining the settlement.

On appeal, St. Alphonsus argues that White possesses no lien on the settlement proceeds, that even if he holds a lien it is subordinate to the hospital lien, and that the common fund doctrine has no application where both claimants are creditors of the injured party.

## ANALYSIS

■ In an appeal from a summary judgment, we apply the same standard of review utilized by the district court when ruling on the motion. *Scona, Inc. v. Green Willow Trust*, 133 Idaho 283, 286, 985 P.2d 1145, 1148 (1999); *Drew v. Sorensen*, 133 Idaho 534, 537, 989 P.2d 276, 279 (1999). Summary judgment may be entered only if "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Idaho Rule of Civil Procedure 56(c). In this case, the parties stipulated to the pertinent facts, and it is not

contended that there are any material factual issues. Therefore, the sole issue presented by the motion is one of law upon which we exercise free review. *Roell v. Boise City,* 130 Idaho 199, 200–01, 938 P.2d 1237, 1238–39 (1997); *Friel v. Boise City Hous. Auth.,* 126 Idaho 484, 485, 887 P.2d 29, 30 (1994); *Farm Credit Bank of Spokane v. Stevenson,* 125 Idaho 270, 272, 869 P.2d 1365, 1367 (1994).

It is undisputed that, pursuant to Idaho Code § 45–701,[1] *et seq.,* St. Alphonsus possesses a statutory hospital lien on the settlement paid by Kent's liability insurer. The hospital's lien consumes the entire $25,000 recovery unless White has a superior claim to a portion of the proceeds.

## A. Attorney's Lien

The first question presented is whether White also possessed a statutory lien. If so, we must determine the relative priority of the liens. The statute that authorizes an attorney's charging lien is I.C. § 3–205, which provides:

> The measure and mode of compensation of attorneys and counselors at law is left to the agreement, express or implied, of the parties, which is not restrained by law. *From the commencement of an action, or the service of an answer containing a counterclaim,* the attorney who appears for a party has a lien upon his client's cause of action or counterclaim, which attaches to a verdict, report, decision or judgment in his client's favor and the proceeds thereof in whosoever hands they may come; and can not be affected by any settlement between the parties before or after judgment.

(Emphasis added.) Based on the italicized portion of this statute, St. Alphonsus argues that no attorney's lien can arise unless a lawsuit has been initiated by the attorney against the wrongdoer on behalf of the in-

jured person. In the present case, White negotiated a settlement with Kent and Kent's liability insurer without having filed a lawsuit. For that reason, St. Alphonsus argues, no attorney's lien arose.

 We agree. Unambiguous language in a statute must be given force according to its plain meaning by courts applying the statute unless clearly expressed legislative intent is contrary or unless plain meaning leads to absurd results. *Idaho Dep't of Health & Welfare v. Jackman,* 132 Idaho 213, 215, 970 P.2d 6, 8 (1998); *George W. Watkins Family v. Messenger,* 118 Idaho 537, 539–40, 797 P.2d 1385, 1387–88 (1990); *Zener v. Velde,* 135 Idaho 352, 17 P.3d 296 (Ct.App.2000); *Atkinson v. State,* 131 Idaho 222, 224, 953 P.2d 662, 664 (Ct.App.1998). The plain language of I.C. § 45–701 makes the commencement of an action or service of a counterclaim a prerequisite for the creation of an attorney's charging lien. While the fairness of this limitation might be debated, it cannot be said that it leads to an absurd result. Rational reasons for the requirement can be readily discerned. If a wrongdoer does not tender compensation to an injured person until after a lawsuit has been filed, it is likely that the services of the injured person's attorney were instrumental in achieving the payment. On the other hand, where the wrongdoer capitulates and settles before any action is filed, the significance of the attorney's services is in much greater doubt; it might as readily be assumed that the wrongdoer intended to provide compensation all along and that the attorney had little, if anything, to do with inducing the settlement. The legislature thus limited the availability of an attorney's charging lien to circumstances where the value of the attorney's service is more clearly demonstrated. In the present case, because no action was filed on behalf of Ms. Krivanec before payment of the settle-

---

1. Idaho Code § 45–701 provides:

 Every individual, partnership, firm, association, corporation, institution or any governmental unit or combination or parts thereof maintaining and operating a hospital in this state shall be entitled to a lien for the reasonable charges for hospital care, treatment and maintenance of an injured person upon any and all causes of action, suits, claims, counterclaims, or demands accruing to the person to whom such care, treatment, or maintenance was furnished, or to the legal representatives of such person, on account of injuries giving rise to such causes of action and which necessitated such hospital care, treatment and maintenance.

 St. Alphonsus perfected its lien by filing a notice of the lien within ninety days after Ms. Krivanec's discharge as required by I.C. § 45–702.

ment, White did not acquire a lien under I.C. § 3–205.[2]

White next argues that even if he cannot satisfy the criteria for a statutory lien, he possesses a common law or equitable lien to secure his claim for fees and costs. Idaho law, however, is to the contrary. In *Frazee v. Frazee,* 104 Idaho 463, 464, 660 P.2d 928, 929 (1983), the Idaho Supreme Court observed that an attorney's charging lien "did not exist in Idaho at common law," and in *Kerns v. Washington Water Power Co.,* 24 Idaho 525, 536, 135 P. 70, 73 (1913), the Court stated that prior to the enactment of the statute that is now codified as I.C. § 3–205, "there was no law in this state which provided for a lien for attorney's fees."

■ White relies upon *Dahlstrom v. Featherstone,* 18 Idaho 179, 110 P. 243 (1910), where the Idaho Supreme Court did discuss the possibility of an equitable lien for attorney fees. The Court did not actually rule on the existence of such a lien in that case, however. Instead, the Supreme Court reversed the trial court's grant of an equitable lien due to procedural irregularities in the way the attorney presented the claim. Irrespective of the import of the *Dahlstrom* decision when it was issued, the Idaho Supreme Court's more recent decisions in *Frazee* and *Kerns* have negated the notion of any common law lien. Accordingly, we hold that the only type of attorney's charging lien provided under Idaho law is that defined in I.C. § 3–205.

## B. Common Fund Doctrine

Finally, we turn to White's argument that, even absent a valid attorney's lien, he is entitled to collect his fees and costs from the proceeds of the settlement by application of the "common fund doctrine."

■ The common fund doctrine has been applied by the Idaho Supreme Court in addressing the respective interests of an injured plaintiff who has recovered from a third-party tortfeasor and the plaintiff's own insurance company that paid medical or other benefits as a consequence of the plaintiff's

injuries and thereby obtained a subrogation interest in the plaintiff's recovery. In that circumstance, the common fund doctrine requires that the subrogee insurance company pay its pro rata share of the attorney fees and expenses incurred in obtaining the settlement or judgment against the tortfeasor. *See Wensman v. Farmers Ins. Co. of Idaho,* 134 Idaho 148, 997 P.2d 609 (2000); *Cedarholm v. State Farm Mut. Ins. Companies,* 81 Idaho 136, 338 P.2d 93 (1959). The purpose of the doctrine is to afford fairness to the injured party, "for it would be unjust to require him to incur expenses for the recovery of money for the benefit of the insurer, without being allowed to reimburse himself." *Cedarholm,* 81 Idaho at 142, 338 P.2d at 96 (quoting 29 AM.JUR., *Insurance,* § 1346, p. 1008). The common fund doctrine is applied also in fiduciary law; a trustee or beneficiary of a trust who has taken steps to preserve or acquire assets for the trust is deemed entitled to compensation from the trust fund. *See Trevino v. HHL Fin. Serv., Inc.,* 945 P.2d 1345 (Colo.1997). As the United States Supreme Court explained, "[W]here one of many parties having a common interest in a trust fund, at his own expense takes proper proceedings to save it from destruction and to restore it to the purposes of the trust, he is entitled to reimbursement, either out of the fund itself, or by proportional contribution from those who accept the benefit of his efforts." *Trustees v. Greenough,* 105 U.S. 527, 532, 26 L.Ed. 1157, 1160 (1881).

White urges that the common fund doctrine should be applied in the present case to require that St. Alphonsus pay the entirety of White's attorney fees and expenses inasmuch as St. Alphonsus will receive the entirety of the $25,000 settlement. St. Alphonsus responds, however, that the common fund doctrine does not "fit" here because St. Alphonsus is not asserting a subrogation interest in the settlement but, rather, is a creditor of Ms. Krivanec with a lien against the settlement proceeds to secure her debt to the hospital. No previous decision of an Idaho appellate court has considered whether

---

2. St. Alphonsus concedes that the requirement for "commencement of an action" might be satisfied by proceedings other than an action in court, such as an arbitration or mediation proceeding.

That is a matter we need not decide because no such nonjudicial proceedings were initiated by White on behalf of Ms. Krivanec.

the common fund doctrine should be applied where it is a creditor, rather than a subrogree insurer, making a claim against settlement proceeds, and we are therefore presented with an issue of first impression.

■ In our view, the present case is not appropriate for application of the common fund doctrine. In common fund cases, the beneficiaries of the fund are similarly situated and have like claims to the fund. This commonality characterizes the beneficiaries of a trust as well as the subrogee insurer who stands in the shoes of the injured party for purposes of a claim to payment from a third-party wrongdoer. In addition, in common fund cases there would be no recovery for any claimant but for the services of the attorney who generated the recovery. These characteristics are not present when one of the claimants to the fund is a hospital with a lien. A hospital does not stand in the shoes of the injured party as a subrogee does; rather, it is a creditor who possesses a lien on the tort recovery to secure payment of its charges for services provided to the injured party. A hospital is entitled to payment from the injured person regardless of whether compensation is ever received from a third party.[3] Thus, the hospital is not a direct beneficiary of the attorney's services but benefits incidentally because the third-party payment provides assets to the injured person that can be reached by the hospital. The injured person remains a beneficiary of the settlement proceeds because her indebtedness to the hospital is correspondingly reduced.

■ Some clarity may be brought to this distinction between a subrogee and a hospital lien holder by considering other types of creditors of an injured person. An injured person's recovery from a wrongdoer may enable the person to pay debts owed to many creditors, but the creditors are not thereby obligated to share in the attorney fees in-

curred to obtain the recovery. A hospital to which the claimant is indebted for medical care should not shoulder a burden that is not borne by other creditors merely because it holds a lien on the tort recovery. This was aptly explained by the California Supreme Court in *City & County of San Francisco v. Sweet*, 12 Cal.4th 105, 48 Cal.Rptr.2d 42, 906 P.2d 1196 (1995):

A personal injury action seeking to recover damages for injuries inflicted on the plaintiff by another is not an action taken for the benefit of the plaintiff's creditors. It is prosecuted for the benefit of the plaintiff. Carried to its logical conclusion the rule espoused by defendants [for application of the common fund doctrine] . . . would expand the common fund exception well beyond the "exceptional" common fund/substantial benefit cases in which equitable principles justify apportionment of attorney fees. The theory . . .—that a creditor would have no source from which to satisfy a debt owed by an indigent if the indigent had not achieved a tort recovery—is not logically capable of limitation to indigent recipients of county-provided hospital and medical care. In any case in which a debtor is unable presently to meet an obligation, a success in obtaining a monetary judgment or settlement, whether or not related to the event giving rise to the debt, would create a "fund" from which the creditor could recover. . . . [A] successful will contest would create a fund, as would a successful action seeking damages for breach of contract. Logically, if several judgment creditors placed liens on a debtor plaintiff's cause of action because no other source of payment was available, the recovery of each creditor would be reduced by a share of the plaintiff's attorney fees proportionate to the debt owed that creditor. No case has been called to our attention which suggests that a creditor's recov-

---

**3.** Under Idaho's hospital lien law, St. Alphonsus was not even dependent upon Ms. Krivanec and her counsel to pursue the personal injury claim, for I.C. § 45–704 authorizes a hospital lien holder to prosecute its own independent action to foreclose the lien. Therefore, while use of the common fund doctrine may appear fair in jurisdictions where hospitals cannot foreclose their liens and are thus wholly dependent upon the

efforts of the injured person's attorney, such an argument is not pertinent to Idaho's statutory scheme. White counters that if the hospital independently prosecuted a claim, it would have to pay a fee to its own attorney. While this is undoubtedly true, it is equally true that the hospital in that event would be free to use counsel of its own choosing and to negotiate a fee arrangement on terms acceptable to the hospital.

244 244

ery on a judgment lien should be reduced by an amount attributable to the plaintiff's litigation expenses in an action which provides a source of payment of the debt. *Id.* 48 Cal.Rptr.2d 42, 906 P.2d at 1203.

We base our decision also upon recognition that application of the common fund doctrine here would run counter to the intent of the legislature in adopting the hospital lien statutes. The obvious purpose of those statutes is to *enhance* a hospital's ability to collect payment for services rendered to an accident victim. It would plainly impede this legislative purpose if this Court were to hold that the hospital's superior position as a lien holder will *reduce* its recovery by obligating the hospital to pay a pro rata share of the injured person's attorney fees.

■ In concluding that the common fund doctrine is inapplicable to hospital lien claimants, we join the distinct majority of other jurisdictions that have considered this issue where the priority between claims of an attorney and a hospital is not specified by statute. Concisely stated, "the majority rule holds that, while parties who depend on the outcome of the litigation to recover their share of the funds are required to share in the costs of the litigation, hospital lien creditors are entitled to payment regardless of the outcome of the litigation and therefore are not required to share in the litigation costs." *Labombard v. Samaritan Health System*, 195 Ariz. 543, 551, 991 P.2d 246, 254 (1998). Decisions adopting the majority position include *Mitchell v. Huntsville Hosp.*, 598 So.2d 1358 (Ala.1992); *City & County of San Francisco, supra; Trevino, supra; Hosp. Bd. of Dir. of Lee County v. McCray*, 456 So.2d 936, 939 (Fla.Dist.Ct.App.1984); *Crowder v. Dade County*, 415 So.2d 732 (Fla.Dist.

Ct.App.1982); *Maynard v. Parker*, 75 Ill.2d 73, 25 Ill.Dec. 642, 387 N.E.2d 298 (1979); *Harlow v. Lloyd*, 15 Kan.App.2d 497, 809 P.2d 1228 (1991); *Sisters of Charity of Providence of Montana v. Nichols*, 157 Mont. 106, 483 P.2d 279 (1971); *Bashara v. Baptist Mem'l Hosp. Sys.*, 685 S.W.2d 307 (Tex. 1985).

At least two jurisdictions take a contrary view. *See Martinez v. St. Joseph Healthcare Sys.*, 117 N.M. 357, 871 P.2d 1363 (1994); *In Re Guardianship of Bloomquist*, 246 Neb. 711, 523 N.W.2d 352 (1994). Both of these cases hold that it would be inequitable to allow a hospital to collect its lien without paying its prorated share of legal expenses. We, however, find the majority position to be correct for the reasons stated above.[4]

White's only attorney-client relationship and only fee agreement was with Loretta Krivanec and her husband, and it is to them that he must look for payment of his legal fees. White could have protected himself against the present conflict by consulting with St. Alphonsus before he began to pursue the case on behalf of Ms. Krivanec, to determine the hospital's position regarding the sharing of legal costs. Not having done so, he may not now look to St. Alphonsus for compensation.[5]

## CONCLUSION

For the foregoing reasons, the district court erred in granting summary judgment to White and in denying St. Alphonsus' motion for summary judgment. Accordingly, the judgment of the district court is reversed, and the case remanded for entry of

4. White has also presented an argument that if the hospital lien statute is not interpreted to incorporate the common fund doctrine, the statute must be deemed unconstitutional as it would "effectively chill access to the courts for countless personal injury victims because attorneys would either refuse to accept such cases or would be ethically prohibited from representing such individuals." According to White, this chilling effect would amount to an infringement of the individual's right of access to the courts under Article I, § 18 of the Idaho Constitution. This constitutional challenge was not presented to the district court, however, and is raised for

the first time on appeal. Consequently, it will not be addressed. *See Roell v. Boise City*, 134 Idaho 214, 216, 999 P.2d 251, 253 (2000); *Meisner v. Potlatch Corp.*, 131 Idaho 258, 262, 954 P.2d 676, 680 (1998); *Corder v. Idaho Farmway, Inc.*, 133 Idaho 353, 362, 986 P.2d 1019, 1028 (Ct.App.1999).

5. We imply no opinion as to whether a hospital lien claimant could ever bear liability under a theory of unjust enrichment or quantum meruit to an attorney who pursued a claim on behalf of the injured person. Such theories have not been advanced in the present case.

judgment in favor of St. Alphonsus. Costs on appeal to appellant.

Chief Judge SCHWARTZMAN and Judge Pro Tem HURLBUTT concur.