186 P.3d 663

Christina ALLEN, Claimant,

v.

Anne M. REYNOLDS, Employer,
Defendant–Appellant,

and

State Insurance Fund, Surety,
Defendant–Respondent.

Anne M. Reynolds, (In the matter of Christina Allen v. Anne M. Reynolds and State Insurance Fund,) Claimant,

v.

State Insurance Fund, Defendant.

No. 34369.

Supreme Court of Idaho,
Boise, May 2008 Term.

June 6, 2008.

Brady Law, Chartered, Boise, for appellant. Andrew E. Schepp argued.

Elam Burke, Boise, for respondent. Jon M. Bauman argued.

J. JONES, Justice.

In 2004, Christina Allen, an employee of Why Worry Ranch, LLC, ("WWR") lost her thumb when it was caught in a rope while she was tying a horse. Allen submitted a worker's compensation claim to the Idaho State Insurance Fund ("SIF"). SIF refused to cover Allen's injury, asserting that WWR was not covered by worker's compensation insurance at the time of her injury. Anne Reynolds, the owner of WWR, contends a policy was or should have been in effect at the time of the injury. However, a referee for the Idaho Industrial Commission disagreed, finding that neither Reynolds nor WWR had worker's compensation coverage on July 14, 2004, when the accident occurred. The referee's findings were adopted by the Industrial Commission. Reynolds appealed to this Court, and we affirm.

### I.

Since 1983, Reynolds has owned and operated a horse ranch in Elmore County, named Why Worry Ranch. In 2000, the operation was changed from a sole proprietorship to a limited liability company, with Reynolds being the only member. Since that time employees worked for and were paid by WWR. From 2000 to 2004, Reynolds had a worker's compensation insurance policy issued by Western Community Insurance Company. She got the insurance through a local agent, Tom Hart, who in turn found it through Farm Insurance Brokerage ("FIB").[1] In 2003, Western Community ceased writing worker's compensation insurance in Idaho and began transferring its insureds to SIF.

Hart received pre-printed application forms from a subsidiary of FIB to forward to SIF in order to transfer Reynolds' insurance. These forms stated the applicant's name was "Anne M. Reynolds" and the type of business was "individual." Reynolds' worker's compensation insurance for the prior four years had been issued in Reynolds' name, as sole proprietor, not in the name of her ranch, WWR.

On February 4, 2004, Dixie Black, Hart's assistant, visited Reynolds at her ranch. Together, they completed the application while Reynolds sat atop a horse. Reynolds admitted she probably did not read everything on the application and did not notice that WWR was not mentioned anywhere on it.

FIB submitted the application to SIF. An underwriter at SIF sent Reynolds a quote for a premium deposit of $1177.00. The quote listed "Anne M. Reynolds" as the insured and described her as "Exempt—sole proprietor." Reynolds sent a check drawn on the WWR bank account to pay the deposit. A SIF underwriter noticed the discrepancy and called FIB to find out whether WWR should be on the policy. FIB told the underwriter that the agent was gone for two weeks, so the underwriter wrote coverage for Reynolds as sole proprietor and noted the "dba" could be changed if necessary.

On March 18, 2004, an SIF underwriter sent FIB a coverage advisory form. The form asked Reynolds to acknowledge that SIF covered only Reynolds, individually, and not WWR. Reynolds refused to sign the

---

1. This acronym merely results from using the first letter of each word in the name of the brokerage and is not intended to reflect on the credibility of that entity.

form, telling Black, "I am WWR." SIF again sent a form on April 18, 2004. Reynolds again refused to sign and return the form. However, Reynolds never communicated her refusal to sign to SIF. She testified that she directed her bookkeeper, Sue Cenarrusa, to change the policy. Cenarrusa testified Reynolds never told her to change the policy.

Meanwhile, SIF was also dealing with an issue of payroll reporting. SIF requires insureds to inform it of the actual payroll of the insured entity in order to calculate the correct premium. On March 28, 2004, SIF sent Reynolds a payroll report form with a self-addressed return envelope. The form, specific to Reynolds (not WWR), required that Reynolds fill out a few numbers and return it to SIF. The form stated at the top, "Cancellation may be initiated if report is not received by the due date." The form also had an identification number that SIF automatically scans into the computer upon return of the form, thus preventing any reminder letters or notices of cancellation from being generated. Reynolds did not return the report. SIF sent Reynolds a reminder letter on April 26, 2004. She still failed to return the report, even though she testified she was "concerned" about it.

SIF sent Reynolds a Notice of Cancellation on May 11, 2004, indicating the policy would be cancelled effective May 31 due to her failure to file a payroll report. Reynolds' husband signed the certified mail receipt for the notice on May 14. SIF cancelled the policy, as per the warning, on May 31, 2004.

■ Before the policy was cancelled, SIF indicated to Reynolds and her agent that it might be possible to assign the policy from Reynolds to WWR without lapse. However, since Reynolds failed to provide the necessary payroll report, SIF cancelled the policy instead of assigning it. SIF underwriters have discretion to reinstate a policy without lapse if a person remedies the problem that caused her policy to lapse—here, the delinquent payroll report. Thus, if Reynolds had submitted a payroll report within 30 days of cancellation, her policy could have been reinstated and then assigned to WWR. However, the 30-day deadline apparently was not communicated to Reynolds, although the SIF

underwriter indicated to the Farmers Insurance broker on June 1 that it needed to be submitted "right away" and "as soon as possible." Reynolds' bookkeeper, Cenarrusa, sent SIF a spreadsheet purporting to be a "payroll summary" on June 13. However, Cenarrusa failed to use the payroll report form or self-addressed envelope provided by SIF, nor did she include the employee codes required by SIF. She also apparently misaddressed the document, because SIF did not receive it until two weeks later, on July 1–31 days after the policy was cancelled.

SIF made a final effort to help Reynolds reinstate coverage. On July 2, SIF asked Reynolds for a letter certifying that she had not had any worker's compensation claims and for a new application naming WWR as the insured. SIF gave Reynolds only a few days to submit the letter and application, requesting she complete and return them by July 6. Reynolds failed to meet the deadline, even though the SIF underwriter gave her until July 8 to comply.

On July 14, Christina Allen, an employee of WWR, severely injured her thumb while tying a horse. The thumb was later amputated. That day, Reynolds called Cenarrusa to confirm that the worker's compensation problem had been addressed. Cenarrusa assured her it had been. However, Cenarrusa lied. Hours later, Cenarrusa faxed the application and the certification of no claims to SIF. She pre-dated the application to state July 10, so that it appeared as though she sent it before Allen's accident occurred. However, the fax machine's print-out revealed Cenarrusa's deception. Further, Cenarrusa failed to fax the documents to the correct entity. Instead of sending them to SIF, she faxed them to the Industrial Commission. The documents were routed to SIF on July 16.

About one month later, Reynolds discovered that Cenarrusa had embezzled around $350,000 from her over the previous five years. On September 10, Reynolds wrote a letter to SIF explaining what had occurred and expressing remorse for Cenarrusa's failure to provide SIF with the correct documents. However, Reynolds has asserted throughout this litigation that SIF received

the payroll report, or Cenarrusa's spreadsheet, in a timely manner.

Allen filed a worker's compensation complaint with the Industrial Commission on April 12, 2005. Both SIF and Reynolds filed answers to the complaint. In addition, Reynolds and WWR filed their own complaint with the Commission. A hearing officer was assigned and in November 2006, the hearing officer heard the dispute between Reynolds and WWR and the SIF. The hearing officer entered Findings of Fact, Conclusions of Law, and Recommendation to the effect that neither Reynolds nor WWR was covered by worker's compensation at the time of the accident. The Commission adopted the findings, conclusions, and recommendation in its order dated June 1, 2007. Reynolds filed a timely appeal.

## II.

The issue in this case is whether WWR had worker's compensation insurance in effect on July 14, 2004. We hold it did not, and we therefore affirm the Industrial Commission.

## A.

■ The standard of review of an Industrial Commission decision is twofold. This Court exercises de novo review of the Commission's legal conclusions. *Stewart v. Sun Valley Co.,* 140 Idaho 381, 384, 94 P.3d 686, 689 (2004). However, the Court will not disturb the Commission's factual findings so long as they are supported by substantial and competent evidence. I.C. § 72–732; *Snyder v. Burl C. Lange, Inc.,* 109 Idaho 167, 169, 706 P.2d 56, 58 (1985).

## B.

Reynolds posits several theories as to why this Court should find for her. She alleges her policy was not cancelled in strict compliance with I.C. § 72–311; that SIF is estopped to deny coverage for a variety of reasons; and that SIF's conditions of reinstatement were arbitrary, capricious, and unreasonable. SIF asserts only that the Industrial Commission did not err.

■ It is unnecessary to consider Reynolds' claims regarding the policy issued in her name—whether it was improperly cancelled and whether SIF wrongfully failed to reinstate it—because an answer in her favor on either or both of such questions would not provide worker's compensation coverage for an employee of WWR. The referee correctly observed that even if the cancellation of the policy was not in strict compliance with I.C. § 72–311(2), "it is irrelevant to this matter because that coverage did not extend to [Allen] in any event." The same applies to the manner in which SIF handled the issue of reinstatement of the policy. The SIF policy covered Reynolds, not WWR. Allen was an employee of WWR, not Reynolds. Thus, even if the policy had been in existence at the time of Allen's accident, it would not have covered her injury.

■ Reynolds asserts that the policy should have been issued to WWR in the first place, but the contracting documents show otherwise. The application for insurance, which Reynolds signed, clearly shows Anne M. Reynolds, an "individual," to be the applicant. Immediately above the line on which she signed the application, it states, "The undersigned Applicant certifies that he or she has read the foregoing application and certifies that all of the information contained in the application is true, accurate, and complete. Further, Applicant understands that SIF will rely on the information contained in this application in the issuance of a policy." The policy was issued in Reynolds' name in response to the application, constituting the contract between the parties. "The rule in Idaho is well established that a party's failure to read a contract will not excuse his performance." *Irwin Rogers Ins. Agency, Inc. v. Murphy,* 122 Idaho 270, 273, 833 P.2d 128, 131 (Ct.App.1992). Since the insurance contract provided for coverage of Reynolds, an individual, not WWR, it is irrelevant whether SIF improperly canceled, or failed to reinstate, it.

■ In order to prevail on appeal, Reynolds must establish either that there was an agreement to substitute WWR in her place as the insured under the policy or that SIF is estopped from denying that WWR had cover-

age under the policy at the time of the accident. Neither alternative is supported by the record. While SIF did propose several alternatives that would provide coverage to WWR, Reynolds failed to comply with the offered conditions for coverage. For whatever reason—Reynolds' failure to provide a timely response, failure of communication, or whatever—there was never a meeting of the minds on an arrangement that would provide coverage for WWR.

### C.

■■■■ Reynolds contends that SIF is estopped from denying coverage to WWR, asserting both equitable estoppel and quasi-estoppel theories. Equitable estoppel arises

[w]hen a party makes a false representation or concealment of a material fact with actual or constructive knowledge of the truth; it is made with the intent that it be relied upon; the party asserting estoppel does not know or could not discover the truth; and the party asserting estoppel relies on it to the party's prejudice.

*Hecla Min. Co. v. Star–Morning Min. Co.,* 122 Idaho 778, 782, 839 P.2d 1192, 1196 (1992). The doctrine of quasi-estoppel "prevents a party from asserting a right, to the detriment of another party, which is inconsistent with a position previously taken." *Atwood v. Smith,* 143 Idaho 110, 114, 138 P.3d 310, 314 (2006) (quoting *C & G, Inc. v. Canyon Highway Dist. No. 4,* 139 Idaho 140, 144, 75 P.3d 194, 198 (2003)). This doctrine applies when: (1) the offending party took a different position than his or her original position, and (2) either (a) the offending party gained an advantage or caused a disadvantage to the other party; (b) the other party was induced to change positions; or (c) it would be unconscionable to permit the offending party to maintain an inconsistent position from one he or she has already derived a benefit or acquiesced in. *C & G, Inc.,* 139 Idaho at 145, 75 P.3d at 199. Estoppel theories generally present mixed questions of law and fact. *The Highlands, Inc. v. Hosac,* 130 Idaho 67, 69, 936 P.2d

1309, 1311 (1997) (citations omitted). Because mixed questions of law and fact are primarily questions of law, this Court exercises free review. *Id.*

### i.

■■■■ Reynolds first argues that Hart and Black were agents of SIF, that they represented the policy would cover WWR, and that SIF is bound by their representations. SIF counters that this argument is raised for the first time on appeal. This Court will not consider arguments raised for the first time on appeal. *Obenchain v. McAlvain Constr., Inc.,* 143 Idaho 56, 57, 137 P.3d 443, 444 (2006). SIF appears to be correct. A review of Reynolds' pre-hearing statement and her counsel's opening statement before the referee discloses that the estoppel arguments were directed to events that occurred in June and July of 2004, well after the policy was issued.

In any event, estoppel would not apply against SIF unless Hart or Black had authority to act on behalf of SIF. Reynolds has pointed to no evidence to support her claim that Hart and Black were agents of SIF, that they had authority to act on its behalf, or that they were cloaked with apparent authority to do so. Hart and Black were agents of FIB. The contract between SIF and FIB expressly provides that FIB is an independent contractor. The contract states, among other responsibilities and limitations, that FIB shall not "Exercise, assert, or represent to any person, business or organization that the Agent has any binding authority regarding the Fund or its policies." Further, it states, "The Fund shall retain the *exclusive* right to do the following: 1. Accept or reject applications for coverage; 2. Make, add to, or in any way alter a policy by written endorsement; 3. Extend, cancel or terminate a policy ...." Thus, FIB had no authority to bind SIF. Nor would Hart or Black have authority to bind SIF.[2]

### ii.

■■ Reynolds next argues that SIF's "inconsistent and contradictory positions" with

---

**2.** If Hart and Black misrepresented the policy to Reynolds, she would need to seek her remedy against them. In his findings, the referee noted that she was then pursuing a legal action against Hart, FIB, and SIF.

regard to its offers to reinstate her coverage should estop it from denying coverage. Reynolds claims SIF was bound to provide coverage for WWR based on two separate offers of reinstatement. We note at the outset that SIF had no obligation to offer to reinstate Reynolds' policy. Further, Reynolds failed to meet the terms SIF offered.

SIF communicated an offer of reinstatement to FIB on June 1, 2004, the day after Reynolds' policy was cancelled. SIF offered to reinstate Reynolds' insurance if she sent in a payroll report "as soon as possible." That would allow an assignment to WWR. However, this offer was for reinstatement of the policy which was still then in Reynolds' name. Because the policy was canceled for Reynolds' failure to furnish an adequate payroll report, there was nothing to assign to WWR. There simply is no basis for application of quasi-estoppel or equitable estoppel under these circumstances.

Reynolds also claims SIF should be equitably estopped based on its second offer of reinstatement made on July 2, 2004. That offer came about when the SIF underwriter approached his supervisor to attempt to salvage Reynolds' original policy. The supervisor agreed to extend the deadline even longer for Reynolds. This time, the supervisor imposed three conditions: 1) Reynolds was to submit a statement that she had no worker's compensation claims during the uncovered period; 2) Reynolds was to submit a new application naming the proper entity (WWR); and 3) Reynolds was to have these documents back to SIF by July 6. This offer was relayed from SIF to FIB, who communicated it to Hart's office. Black communicated the offer to Reynolds on July 5. All parties noted the looming deadline, which the SIF underwriter testified he would have extended even until July 8. Reynolds failed to meet the deadline. Equitable estoppel has no application to these facts. There was no false representation made by SIF, nor did it conceal any facts. It made an offer to reinstate the policy and to constitute WWR the insured, provided that Reynolds fulfilled certain conditions in a certain amount of time. Reynolds failed to do so.

## III.

Reynolds seeks attorney fees under I.C. § 72–804 and I.C. § 12–121. Since she is not the prevailing party, she is not entitled to a fee award. SIF is the prevailing party in this case. It has requested attorney fees pursuant to I.C. § 12–121.[3] However, this Court has ruled that I.C. § 12–121 does not provide authority for an award of attorney fees on appeals from administrative agency rulings. *Curtis v. M.H. King Co.*, 142 Idaho 383, 388, 128 P.3d 920, 925 (2005). Therefore, we decline to award the requested fees.

SIF also asks this Court for Rule 11 sanctions against Reynolds' counsel for asserting matters not well grounded in fact and not warranted by existing law. IAR 11.1. While, for the most part, Reynolds requests that we second-guess the Industrial Commission on issues of fact and while at least one issue was raised for the first time on appeal, there is no pervasive indication that Reynolds' attorney pursued this appeal for an improper purpose and, therefore, we decline to award fees under IAR 11.1. *See Painter v. Potlatch Corp.*, 138 Idaho 309, 315, 63 P.3d 435, 441 (2003).

## IV.

The decision of the Industrial Commission is affirmed. SIF is awarded its costs on appeal.

Justices BURDICK, W. JONES, HORTON, and Pro Tem KIDWELL concur.

---

**3.** SIF did not request fees pursuant to I.C. § 12–117 so we do not consider whether an award would have been appropriate under that section.