IN THE SUPREME COURT OF THE STATE OF IDAHO

**Docket No. 37623**

PATRICK W. WILLIAMS,

       Claimant-Appellant,

v.

BLUE CROSS OF IDAHO,

       Respondent-Respondent on Appeal.

)
)
)
)
)
)
)
)
)
)
)
)

**Boise, April 2011 Term**

**2011 Opinion No. 93**

**Filed: September 2, 2011**

**Stephen W. Kenyon, Clerk**

Appeal from the Industrial Commission of the State of Idaho.

The decision of the Industrial Commission is <u>affirmed</u>, but the case is <u>remanded.</u>

Elsaesser Jarzabek Anderson Elliott & Macdonald, Chtd., Sandpoint, for appellant. James S. Macdonald argued.

Chasan & Walton, LLC, Boise, for respondents. Timothy C. Walton argued.

_____

J. JONES, Justice.

Patrick Williams appeals the Industrial Commission's determination that I.C. § 72-802 does not prohibit Blue Cross of Idaho from seeking to exercise its contractual right of subrogation against Williams' lump sum settlement proceeds. We affirm.

**I.**
**Factual and Procedural Background**

Patrick Williams suffered two injuries to his left shoulder while he was an employee of AAA Plumbing. Williams underwent two surgeries in an effort to repair these injuries. The State Insurance Fund (the SIF) initially provided Williams with workers' compensation benefits to cover a portion of his medical expenses, but later refused to provide additional coverage on the ground that any medical treatment Williams received for his left shoulder was not for work-related injuries

but, rather, for a pre-existing shoulder condition.[1] As such, the SIF refused to cover the expenses associated with the two shoulder surgeries.

After the SIF refused to provide further workers' compensation benefits, Williams sought payment for his remaining medical expenses in the amount of $31,195.14[2] from Blue Cross of Idaho, his personal medical insurance provider. As a benefit of his employment with AAA Plumbing, Williams was insured through a non-occupational group insurance policy with Blue Cross for which AAA Plumbing paid a portion of the premium. Blue Cross accepted responsibility for payment of these medical expenses, and after making contractual adjustments with the medical providers, Blue Cross was able to satisfy Williams' medical bills for $11,181.08.

Williams' insurance contract with Blue Cross contains several subrogation and reimbursement provisions. With regard to Blue Cross' rights of subrogation and reimbursement, the insurance policy provides:

> The benefits of this Policy will be available to an Insured when he or she is injured, suffers harm or incurs loss due to any act, omission, or defective or unreasonably hazardous product or service of another person, firm, corporation or entity (hereinafter referred to as "third party"). To the extent that such benefits for Covered Services are provided or paid for by Blue Cross of Idaho under this Policy or any other Blue Cross of Idaho plan, agreement, certificate, contract or policy, Blue Cross of Idaho shall be subrogated and succeed to the rights of the Insured or, in the event of the Insured's death, to the rights of his or her heirs, estate, and/or personal representative.

In addition to seeking payment from Blue Cross, Williams filed a complaint with the Industrial Commission seeking workers' compensation for the medical expenses incurred as a result of the two shoulder surgeries, as well as benefits for temporary and permanent disability as a result of such injuries. On February 20, 2008, Williams entered into a lump sum settlement agreement with the SIF. Pursuant to the settlement agreement, Williams received $70,000 in exchange for releasing the SIF from liability for any and all claims associated with the industrial accidents. The settlement agreement provides:

> There are genuine and substantial disputes and differences between the parties as to the degree, if any, of Claimant's impairment and disability, the need for

---

[1] During his deposition, Williams testified he had injured his left shoulder in a motorcycle accident in 2005.
[2] While counsel for Williams submitted documentation to the Commission indicating Williams' medical expenses were substantially higher, the Commission found that, based on invoices provided by Blue Cross, Williams had incurred $31,195.14 in medical expenses. Williams did not object to this conclusion before the Commission nor does he challenge it on appeal.

retraining benefits, the need for the surgeries of September 5, 2006 and March 20, 2007 which Defendants assert are due to preexisting conditions, and the need for future medical benefits. The parties, however, wish to settle their differences on a full and final basis advising the Commission that it is in the best interest of the parties to do so. Therefore, as provided by Idaho Code section 72-404, in an effort to settle this disputed matter, the Surety tenders to the Claimant and the Claimant accepts the sum of $70,000.00 in full and final settlement of any and all claims he has or may have as a result of any of the alleged injuries described herein. Further, the parties agree to waive any underpayment of total temporary disability benefits and temporary partial disability benefits which may exist for any reason, including any underpayments that may exist as a result of the method used to calculate the compensation rate(s).

The portion of the settlement agreement regarding the allocation of the settlement proceeds contains the following provision:

ITEMIZED LIST OF OUTSTANDING MEDICALS TO BE PAID BY CLAIMANT FROM THE LUMP SUM SETTLEMENT BALANCE: (List provider and amounts)

None

However, the settlement agreement specifically states that the $70,000 is to be paid in settlement of all potential claims by Williams, including claims for "[d]isputed past medical expenses and future medical benefits." Nothing in the agreement resolves the question of whether the medical care that Williams received was causally related to any of the industrial accidents, nor does the agreement establish what portion of the settlement proceeds are allocated for payment of the disputed medical bills. After the Commission approved the settlement agreement, the SIF paid Williams $70,000, thereby discharging its obligations under the agreement.

While Williams was negotiating the settlement with the SIF, counsel for Blue Cross contacted counsel for Williams on several occasions to inform him that Blue Cross intended to exercise its contractual right of subrogation in the event Williams succeeded in obtaining workers' compensation benefits. After the agreement was finalized before the Commission, Blue Cross sent a letter to counsel for Williams demanding that, pursuant to Blue Cross' right of subrogation, he withhold money from the workers' compensation proceeds for payment to Blue Cross.

In response to these communications from Blue Cross, Williams filed a declaratory judgment action with the Commission arguing that pursuant to I.C. § 72-802, the lump sum proceeds paid to an injured worker are exempt from the claims of all creditors, including Blue Cross. Williams asked the Commission to enter an order directing Blue Cross to take no further

action against Williams to collect any portion of the workers' compensation proceeds.

Before the Commission considered the merits of Williams' petition for declaratory judgment, it requested briefing from both parties regarding whether the Commission had jurisdiction to issue a declaratory ruling in the matter. While both parties asserted that the Commission did not have jurisdiction to decide the matter, the Commission disagreed and proceeded to the merits of the claim.

The Commission ultimately concluded that I.C. § 72-802 does not prohibit Blue Cross from seeking to exercise a contractual right of subrogation because Blue Cross is a subrogee, and not a creditor, within the meaning of the statute. However, the Commission found it did not have jurisdiction to consider a breach of contract claim by Blue Cross against Williams and, therefore, determined that Blue Cross must pursue its remedy in district court. Williams timely appealed the Commission's decision to this Court.

## II.
## Issues on Appeal

I.      Whether the Commission had jurisdiction to consider whether Blue Cross is a subrogee, rather than a creditor, within the meaning of I.C. § 72-802?

II.     Whether I.C. § 72-802 prevents a medical insurer, like Blue Cross, from exercising a contractual right of subrogation against the proceeds of a workers' compensation lump sum settlement?

## III.
## Discussion

**A.      The Commission had jurisdiction to determine Blue Cross' status as a subrogee.**

As mentioned above, the Commission requested briefing on the issue of jurisdiction and ultimately concluded it had jurisdiction to issue a ruling on Williams' declaratory judgment action, even though both parties asserted the action was not appropriately before the Commission. Although neither party challenges the Commission's decision regarding jurisdiction on appeal, this Court can consider the issue of subject matter jurisdiction *sua sponte*. *Bagley v. Thomason*, 149 Idaho 799, 804, 241 P.3d 972, 977 (2010). Because the issue of jurisdiction in this type of case is an important one, we find it appropriate to address the issue.

We conclude that the Commission had jurisdiction to consider whether Blue Cross is a subrogee, rather than a creditor, under I.C. § 72-802, and that the Commission also had jurisdiction to determine the extent of Blue Cross' entitlement to the settlement proceeds. According to I.C. §

4

72-707, "[a]ll questions arising under [the workers' compensation laws of this state], if not settled by agreement or stipulation of the interested parties with the approval of the commission, except as otherwise herein provided, shall be determined by the commission." I.C. § 72-707. Generally, the Commission's jurisdiction is limited to adjudicating "certain complaints filed by a workers' compensation claimant against an employer or an employer's surety." *Owsley v. Idaho Indust. Comm'n*, 141 Idaho 129, 134, 106 P.3d 455, 460 (2005) (emphasis omitted). However, the Commission may properly exercise jurisdiction in cases, like this one, where the Commission is asked to clarify a claimant's rights under a lump sum settlement agreement. Pursuant to I.C. § 72-404, the Commission has the responsibility to approve lump sum settlement agreements and, in doing so, must determine that the settlement is in the best interest of the parties. It necessarily follows that the Commission has jurisdiction to clarify a claimant's rights under a lump sum settlement agreement that is presented for Commission approval.

This is particularly the case where a third party that has provided or paid for medical services received by the claimant asserts entitlement to a portion of the lump sum settlement agreement proceeds. I.C. § 72-803 provides that "[c]laims of attorneys and claims for medical services and for medicine and related benefits shall be subject to approval by the commission." Pursuant to the authority granted under this statute, the Commission has promulgated rules relating to medical fee claims (IDAPA 17.02.09), including a dispute resolution process for settlement of disputes between payors and providers. IDAPA 17.02.09.034.10. If the Commission has legislative authority to resolve disputes between payors and medical providers, there is no ground to conclude that it could not sort out a dispute over lump sum settlement proceeds between a workers' compensation claimant and a payor with a subrogated claim. In fact, read together, I.C. §§ 72-707, -803, and -404 obligate the Commission to determine whether and to what extent a third-party medical insurance provider is entitled to be subrogated to a workers' compensation claimant's rights in a settlement agreement subject to Commission approval.

This Court has previously recognized that the Commission has exclusive jurisdiction to determine the subrogation rights of the SIF where a worker also recovers from a third party. *Idaho State Ins. Fund by and through Forney v. Turner*, 130 Idaho 190, 938 P.2d 1228 (1997); *Van Tine v. Idaho State Ins. Fund*, 126 Idaho 688, 889 P.2d 717 (1994). In both cases, we held that the district court lacked jurisdiction to decide whether the SIF was entitled to subrogation under I.C. § 72-223(3), which provides, "If compensation has been claimed and awarded, the employer having

5

paid such compensation or having become liable therefor, shall be subrogated to the rights of the employee, to recover against such third party to the extent of the employer's compensation liability." *Id.* Although that provision does not expressly grant the Commission jurisdiction to determine subrogation rights of the SIF, in each case we held that it was a question arising under workers' compensation law and, thus, within the Commission's grant of exclusive jurisdiction in section 72-707. *Turner*, 130 Idaho at 191, 938 P.2d at 1229; *Van Tine*, 126 Idaho at 690, 889 P.2d at 719.

Although the case at hand concerns the subrogation of a third-party insurer rather than the SIF, both instances require clarification of a worker's rights arising under workers' compensation law. According to the statutory mandates in I.C. §§ 72-707, -803, and -404 mentioned above, the Commission is the proper tribunal to clarify such rights, particularly in the case of a lump sum settlement where a claim for medical services is at issue. Williams, by filing this declaratory judgment action, was essentially asking the Commission to clarify his rights to the proceeds of the lump sum settlement agreement that he entered into with the SIF, particularly in light of Blue Cross' claim for a portion of the settlement proceeds that it argued were for amounts it paid for medical services provided to Williams. In order to determine Williams' rights under the settlement agreement, the Commission necessarily had to determine whether Blue Cross was a subrogee. In determining that Blue Cross was a subrogee, the Commission implicitly determined that Williams was not entitled to all of the lump sum proceeds because Blue Cross had paid Williams' disputed medical bills and, therefore, Blue Cross, as a subrogee, assumed Williams' legal right to attempt to collect payment for such expenses. Consequently, the Commission had jurisdiction to consider whether Blue Cross is a subrogee because Blue Cross' status as subrogee directly affects Williams' entitlement under the lump sum settlement agreement.

Further, although the Commission found that it lacked jurisdiction to decide the extent of Blue Cross's subrogation entitlement, such a determination was also within its authority and was, in fact, necessary to determine whether the lump sum settlement was in the parties' best interest. As mentioned above, the Commission must approve all lump sum settlement agreements, and in doing so, it is the Commission's responsibility to ensure that the settlement is in the best interest of the parties. I.C. § 72-404. This is a responsibility that the Commission must scrupulously honor. *See Wernecke v. St. Maries Joint Sch. Dist. # 401*, 147 Idaho 277, 286, 207 P.3d 1008, 1017 (2009). If an injured worker's insurance company has provided compensation for medical

6

expenses for which the worker is now seeking to obtain workers' compensation benefits, it is in the best interest of the parties to ensure that the insurance company's subrogation claim is resolved contemporaneously with the proposed settlement. This would help ensure that the parties will not be subjected to further litigation after the settlement agreement is finalized. Coupled with the jurisdiction grants in I.C. §§ 72-707 and -803, section 72-404 requires the Commission to do so.

It is also worth noting that before approving the lump sum settlement agreement in this case, the Commission could and should have requested that the parties stipulate as to how the lump sum settlement proceeds were to be allocated, including what portion was to be allocated to Blue Cross for payment of the disputed medical bills. Therefore, pursuant to its authority, the Commission could have attempted to get the parties to stipulate as to how the settlement proceeds were to be allocated and, failing such agreement, determined the entitlement of each.[3]

Now that this Court has determined that the Commission had jurisdiction to consider the question raised in Williams' declaratory judgment action, we must next determine whether the Commission erred in determining that Blue Cross is a subrogee, rather than a creditor, under I.C. § 72-802.

### B. The Commission did not err in determining that Blue Cross is a subrogee, rather than a creditor, within the meaning of I.C. § 72-802.

I.C. § 72-802 provides,

No claims for compensation under this law, including compensation payable to a resident of this state under the worker's compensation laws of any other state, shall be assignable, and all compensation and claims therefor shall be exempt from all claims of creditors, except the restrictions under this section shall not apply to enforcement of an order of any court for the support of any person by execution, garnishment or wage withholding under chapter 12, title 7, Idaho Code.

I.C. § 72-802.

Williams argues that Blue Cross is a creditor under the statute and, therefore, his lump sum settlement proceeds are exempt from any claim by Blue Cross. Blue Cross responds by

---

[3] Although Blue Cross paid $11,181.08, after contractual adjustments, toward Williams' medical bills, Blue Cross may not necessarily be entitled to that full amount as a subrogee. In his workers' compensation complaint, Williams not only sought compensation for the medical expenses that he incurred as a result of the two shoulder surgeries, but he also sought benefits for temporary and permanent disability. Additionally, as consideration for the lump sum settlement payment, Williams gave up his right to compensation for future medical expenses arising from his injuries, and agreed to release the SIF from liability for any and all claims associated with the industrial accidents. Because the lump sum settlement agreement does not clarify what portion of the settlement proceeds are allocated to payment of disputed medical bills, it is not clear what portion of the lump sum settlement proceeds to which Blue Cross is entitled.

arguing that (1) a subrogee, like Blue Cross, is not considered a creditor within the meaning of I.C. § 72-802; (2) Williams will obtain double recovery for his medical expenses if Blue Cross is not permitted to exercise its contractual right of subrogation; (3) the fact that Williams obtained workers' compensation proceeds through a settlement agreement rather than an adjudication does not affect Blue Cross' contractual right of subrogation; and (4) I.C. § 72-802 is preempted by the Employee Retirement Income Security Act (ERISA), if interpreted in the manner Williams proposes.

The Commission determined that:

> [J]ust as the Blue Cross policy fails to create a prohibited assignment, neither is it in derogation of the statutory exemption of compensation from the claims of creditors. Case law draws a clear distinction between "creditors" and "subrogees." . . . it is clear that Blue Cross is not a "creditor" within the meaning of the statute, but is, rather, a subrogee, against whom the prohibitions of the statute do not specifically apply.

This Court exercises *de novo* review over the Commission's legal conclusions. *Allen v. Reynolds*, 145 Idaho 807, 811, 186 P.3d 663, 667 (2008). However, the Court will not disturb the Commission's factual findings as long as they are supported by substantial and competent evidence. *Id*. The interpretation of a statute is a question of law over which this Court exercises free review. *Idaho Conservation League, Inc. v. Idaho State Dep't of Agric*., 143 Idaho 366, 368, 146 P.3d 632, 634 (2006).

We conclude that the Commission did not err in determining that the statutory prohibitions do not apply to Blue Cross because Blue Cross is not a creditor within the meaning of I.C. § 72-802. When interpreting a statute, the Court begins with the literal words of the statute, and where the language of a statute is plain and unambiguous, the Court gives effect to the statute as written, without engaging in statutory construction. *Id.* The plain language of I.C. § 72-802 prohibits (1) a workers' compensation claimant from assigning workers' compensation proceeds to a third party, and (2) a creditor, other than one seeking to recover child support, from asserting a claim against workers' compensation proceeds paid to a claimant. Because Williams makes no argument on appeal that the Blue Cross policy creates a prohibited assignment,[4] the

---

[4] During the proceedings before the Commission, Williams argued that permitting Blue Cross to exercise its right of subrogation was tantamount to permitting Williams to assign his workers' compensation proceeds in violation of I.C. § 72-802. However, as the Commission pointed out, this Court has specifically rejected the assertion that a subrogation clause in a contract constitutes an assignment. *See Rinehart v. Farm Bureau Mutual Ins. Co. of Idaho*,

only issue before this Court is whether Blue Cross is a creditor within the meaning of the statute such that it is barred from seeking to recover any portion of the settlement proceeds. This is an issue of first impression for this Court.

While the workers' compensation statutes do not define the terms creditor and subrogee, Idaho case law makes a clear distinction between the two. For example, in *Kenneth F. White, Chtd. v. St. Alphonsus Regional Medical Center*, the Court of Appeals discussed the distinction between a creditor and a subrogee when determining whether the common fund doctrine was applicable where a creditor, rather than a subrogee insurer, is asserting a claim against settlement proceeds. 136 Idaho 238, 242–43, 31 P.3d 926, 930–31 (Ct. App. 2001). In *White*, Krivanec was treated at St. Alphonsus Medical Center for injuries sustained in a motor vehicle accident. *Id.* at 240, 31 P.3d at 928. St. Alphonsus subsequently recorded a hospital lien for the medical expenses Krivanec had incurred. *Id.* White, Krivanec's attorney, filed a negligence action against the driver of the other vehicle involved in the accident, and eventually settled on behalf of Krivanec for $25,000. *Id.*

White then filed a petition seeking a declaratory ruling that he had a lien against the settlement proceeds for the amount of his attorney fees and costs, which was superior to the lien filed by St. Alphonsus. *Id.* The district court held that pursuant to the common fund doctrine, White was entitled to receive payment out of the settlement proceeds for the fees and costs associated with obtaining the settlement on Krivanec's behalf. *Id.*

On appeal, St. Alphonsus argued the common fund doctrine was not applicable because St. Alphonsus was not asserting a subrogation interest in the settlement but, rather, was a creditor of Krivanec "with a lien against the settlement proceeds to secure [Krivanec's] debt to the hospital." *Id.* at 242, 31 P.3d at 930. When analyzing whether the common fund doctrine was applicable, the Court of Appeals specifically pointed out the difference between a creditor and subrogee, holding:

> [i]n our view, the present case is not appropriate for application of the common fund doctrine. In common fund cases, the beneficiaries of the fund are similarly situated and have like claims to the fund. This commonality characterizes the beneficiaries of a trust as well as the subrogee insurer who stands in the shoes of the injured party for purposes of a claim to payment from a third-party wrongdoer. In addition, in

96 Idaho 115, 117–18, 524 P.2d 1343, 1345–46 (1974). Williams does not appeal the Commission's conclusion in this regard, and his only argument on appeal is that Blue Cross is a creditor within the meaning of the statute.

9

common fund cases there would be no recovery for any claimant but for the services of the attorney who generated the recovery. These characteristics are not present when one of the claimants to the fund is a hospital with a lien. A hospital does not stand in the shoes of the injured party as a subrogee does; rather, it is a creditor who possesses a lien on the tort recovery to secure payment of its charges for services provided to the injured party. A hospital is entitled to payment from the injured person regardless of whether compensation is ever received from a third party.

*Id.* at 243, 31 P.3d at 931. Therefore, the court in *White* made it clear that a subrogee insurer stands in the shoes of the injured worker, and is only entitled to payment if compensation is received from a third party, while a creditor is a third party to whom the injured worker owes money, regardless of whether payment is obtained from a third party.

The distinction between a creditor and a subrogee, as correctly articulated in *White*, is also consistent with the definitions of creditor and subrogee found in Black's Law Dictionary. A creditor is defined as "[o]ne to whom a debt is owed; one who gives credit for money or goods." BLACK'S LAW DICTIONARY 375 (7th ed. 1999). A subrogee is defined as "[o]ne who is substituted for another in having a right, duty, or claim. An insurance company frequently becomes a subrogee after paying a policy claim, as a result of which it is then in a position to sue a tortfeasor who injured the insured or otherwise caused damages." BLACK'S LAW DICTIONARY 1441 (7th ed. 1999). Therefore, although it is true, as Williams argues, that he may end up being required to reimburse Blue Cross for the money expended, this alone does not make Blue Cross a creditor. Rather, Blue Cross possesses a contractual right of subrogation, which potentially allows Blue Cross to take the place of Williams and obtain, *on behalf* of Williams, compensation from a third party. If Blue Cross were simply a creditor, Williams would owe Blue Cross money regardless of whether any compensation was received from a third party. Additionally, if Blue Cross were a creditor, it would not have the same rights Williams possesses because a creditor does not stand in the shoes of the worker as a subrogee does. Consequently, because the plain language of the statute only prohibits creditors from asserting a claim against workers' compensation proceeds, Blue Cross, as a subrogee, is not barred from exercising its contractual right of subrogation against the settlement proceeds.

Furthermore, Blue Cross correctly argues that if this Court were to interpret the statute in the manner in which Williams proposes, it is very possible that Williams would receive double recovery for his expenses. The purpose behind exempting workers' compensation proceeds from the claims of creditors is not to allow the injured worker to recover twice for his or her medical

expenses but, rather, to protect the worker and his or her family from the financial difficulties associated with the worker's injury.

> Workers' compensation awards are intended not to make the worker rich, but to keep an injured worker and the worker's family from becoming destitute because the breadwinner has been injured and cannot work. In order to protect this award and further this policy, workers' compensation statutes typically provide that these awards cannot be attached by creditors. Moreover, they provide that the worker cannot voluntarily assign the proceeds, primarily in order to ensure that injured workers who may have a valid claim but have not yet received the first payments and are desperate for cash do not sell their rights at fire sale prices.

*Validity, construction, and effect of statutory exemptions of proceeds of workers' compensation awards*, 48 A.L.R.5th 473 (1997). As such, if this Court were to affirmatively conclude that an insurance company, which has paid disputed medical bills, can never exercise its contractual rights of subrogation in workers' compensation cases, there is a strong likelihood the worker could recover twice for his or her medical expenses, at least in cases that are factually similar to this case. This Court, in prior decisions, has recognized the importance of interpreting workers' compensation statutes in such a way as to prohibit the injured worker from obtaining double recovery. For example, in *Schneider v. Farmers Merchant, Inc.*, we held that "to allow [the injured worker] to retain both the workmen's compensation benefits and the full tort recovery [from the third-party tortfeasor], would be overcompensatory, and contrary to our [prior case law]." 106 Idaho 241, 245, 678 P.2d 33, 37 (1983). Moreover, as the Commission pointed out in its written decision, if an insurer is aware that, even if the Commission awards workers' compensation benefits to an injured worker, the worker has no obligation to reimburse the insurance company for payment of the same expenses, the insurer will likely hesitate to provide compensation to injured workers who could potentially recover workers' compensation benefits. Therefore, interpreting the statute in the way that Williams proposes could actually have a negative effect on injured workers by discouraging insurance companies from paying medical expenses while the worker is seeking workers' compensation benefits—a potentially lengthy process.

Williams cites to the cases of *State ex. rel. Lisby v. Lisby*, 126 Idaho 776, 890 P.2d 727 (1995), and *In re Almgren*, 384 B.R. 12 (Bankr. Dist. Idaho 2007), to support his claim that Blue Cross is prohibited from exercising its right of subrogation against his workers' compensation proceeds. However, neither case provides guidance on the issue before this Court. In *Lisby*, this

Court held that only fifty-five percent of Lisby's workers' compensation benefits were subject to garnishment for payment of Lisby's past-due child support obligations. 126 Idaho at 779, 890 P.2d at 730. Williams argues that if the statutorily-favored child support creditor in *Lisby* was only able to garnish fifty-five percent of the workers' compensation benefits, then Blue Cross cannot collect from the proceeds of his workers' compensation settlement. Contrary to Williams' argument, *Lisby* is not even applicable to the case at hand. *Lisby* dealt with a child support creditor, which is the type of creditor I.C. § 72-802 specifically allows to assert a claim against workers' compensation proceeds. Further, the Court in *Lisby* determined the creditor was only entitled to garnish fifty-five percent of the workers' compensation proceeds because I.C. § 11-207 specifically limits the amount of money subject to garnishment to fifty-five percent of a person's aggregate disposable weekly earnings, where the person is supporting a dependent child and the garnishment is to enforce a support order that is twelve weeks past due. *Id.* In other words, the Court limited the amount of workers' compensation benefits that could be garnished based on this statutory limitation, and not based on some policy decision that workers' compensation benefits should be entitled to more protection, even from a statutorily-authorized creditor. Therefore, *Lisby* does not support Williams' position, nor does it provide any guidance on the issue of whether Blue Cross is a creditor pursuant to I.C. § 72-802.

Similarly, *In re Almgren* does not provide any assistance to this Court in answering the issue presented on appeal. In that case, the bankruptcy court for the District of Idaho concluded that I.C. § 72-802 protects only those workers' compensation benefits awarded under Idaho law, and not those recovered under a different state's workers' compensation scheme.[5] 384 B.R. at 16. Therefore, the court found that the workers' compensation benefits awarded to the debtor in Tennessee were not exempt from the claim of the Idaho Chapter 7 bankruptcy trustee. *Id.* at 18. Although Williams is correct that *Almgren* stands for the proposition that workers' compensation benefits are exempt from claims by a Chapter 7 bankruptcy trustee, this provides no insight regarding whether an insurance company, like Blue Cross, which possesses a contractual right of subrogation, is a creditor under the statute.

---

[5] This holding has been overruled by the 2009 amendment to I.C. § 72-802, which specifically exempts "compensation payable to a resident of this state under the worker's compensation laws of any other state" from the claims of creditors. I.C. § 72-802 (2009).

Williams also cites to various statutes that reiterate the point that workers' compensation benefits are exempt from the claims of creditors. However, again, none of these statutes are relevant to the actual question of whether Blue Cross is a creditor. For example, Williams cites to I.C. § 11-607, which provides a list of creditor claims that are enforceable against exempt property. Williams argues that because the statute does not mention claims by medical insurance companies, Blue Cross cannot enforce a claim against Williams' workers' compensation proceeds. Williams fails to recognize that the key term in the statute is "creditor." The statute is only applicable if Blue Cross is a creditor, which is the precise issue in this case.

The only statutes Williams cites that could conceivably lend some support to his argument are I.C. § 45-701 and I.C. § 45-705. According to I.C. § 45-701,

> Every individual, partnership, firm, association, corporation, institution or any governmental unit or combination or parts thereof maintaining and operating a hospital in this state shall be entitled to a lien for the reasonable charges for hospital care, treatment and maintenance of an injured person upon any and all causes of action, suits, claims, counterclaims, or demands accruing to the person to whom such care, treatment, or maintenance was furnished, or to the legal representatives of such person, on account of injuries giving rise to such causes of action and which necessitated such hospital care, treatment and maintenance.

I.C § 45-701. I.C. § 45-705 then goes on to state,

> The provisions of this act shall not be applicable to accidents or injuries within the purview of the Workmen's Compensation Law of this state.

I.C. § 45-705. Williams argues that if a hospital that has provided medical treatment to an injured worker cannot assert a claim against workers' compensation proceeds, even though the hospital possesses statutory lien rights, then a medical insurer, like Blue Cross, is similarly not entitled to exercise a claim against workers' compensation proceeds. Although Williams is correct that these statutes address a question closely related to the question in this case—whether I.C. § 72-802 exempts workers' compensation proceeds from the claims of medical providers that have contracted with the worker for the provision of medical services—Williams again fails to grasp the important distinction between a creditor and a subrogee. As the court made clear in *White*, a medical provider that has provided services to an injured worker is a creditor. However, as the Commission correctly determined, Blue Cross is a subrogee, not a creditor.

Because we conclude that the Commission did not err in determining that Blue Cross is a subrogee, it is unnecessary for us to address Blue Cross' remaining arguments.

13

## IV.
## Conclusion

We affirm the Commission's determination that Blue Cross is a subrogee, rather than a creditor, under I.C. § 72-802. Although the Commission's ruling is affirmed, we remand the case for the Commission's further consideration. Costs on appeal are awarded to Blue Cross.

Chief Justice BURDICK, and Justices EISMANN, W. JONES and HORTON CONCUR.